## DERRICK HOGABOOM *vs.* DANIEL HERRICK.

<div style="text-align:right; font-style:italic;">FRANKLIN,<br>January,<br>1832.</div>

Where the surety in a note requested the creditor to sue the principal, and informed him he did not wish to stand as surety any longer, and the creditor delayed to sue till the principal had become insolvent,—held that the surety was not thereby discharged.

A naked agreement between a creditor and one who is holden to him as surety, that the surety should be discharged, and no longer holden for the debt, is without consideration and void :

But if such an agreement so quiet the surety that he thereby neglects taking measures to secure himself till the principal has become insolvent, *quære*, whether he is not discharged from further liability.

Where referees, in an action on note against a surety, decided that the widow of the principal debtor could not be a witness to show that her husband had paid the note, and did not state in their report on what grounds they made their decision,—it was held that it should be presumed they had decided right.

This was an action of *assumpsit* on a promissory note, signed by the defendant and one Stockwell, which by the agreement of the parties was submitted to referees, and the same was made a rule of court. The referees reported generally, that the plaintiff having maintained his action against the defendant, ought to recover the sum of *thirty four dollars, and twenty-five cents*, and *his costs*. They also made a special report disclosing the following facts : 1. It was agreed by the parties that the defendant signed the note for twenty-five dollars, on which this action was brought, as surety for *Ebenezer Stockwell*, the other signer of the note. 2. The

FRANKLIN,
January,
1832.

Hogaboom
vs.
Herrick.

defendant proved, that after the note fell due, some time in the summer of 1825, the defendant requested *Hogaboom*, the plaintiff, to collect the note of Stockwell, and informed the plaintiff that he did not wish to stand as surety for Stockwell any longer, and that Stockwell had returned from Quebec. 3. That afterwards, in the fall following, the parties met at Highgate furnace, when the plaintiff agreed that he would discharge the defendant from all liability on the note, and would not hold the defendant any longer as surety. The parties started to go to Dr. Cutler's to have him write the discharge, but hearing that Cutler was from home, they called evidence of the agreement. 4. That Stockwell had property sufficient to pay the note at any time up to about the first of September, 1828; on the 7th day of which month he died. 5. "That Stockwell's estate was insolvent, and would not pay more than eight or ten cents on the dollar. The commission on said estate expired on or about the 16th of March, 1829. The note was allowed against said estate by the commissioners on the same." 6. "The defendant offered to prove by the widow of said Stockwell, that Stockwell, in his life time, paid said note to the plaintiff; but the referees decided that she could not be admitted to testify." 7. "It did not appear from the time of the agreement at the furnace above mentioned, that the plaintiff called on the defendant for pay on the note till after the death of said Stockwell." 8. "The plaintiff proved by his brother, James, that after the death of Stockwell, James, at the request of the plaintiff called at the defendant's house with the note, and asked the defendant to pay the same. The defendant answered, that he thought the note was paid; but said he would go, and see Stockwell's people, and if the note was not paid, he would pay it, —The note was not shown to the defendant." 9. "Since the suit was commenced, the defendant offered the plaintiff that if he would stop the suit, he would pay what could not be gotten from Stockwell's estate on the note."

The defendant filed exceptions to the general report, founded on the above facts contained in the special report of the referees. At the December adjourned term, 1830, the county court rendered judgement, that the report be accepted, and the plaintiff recover the sum of $34,25 damages, and $35,58 costs. To which the defendant excepted, and the case was brought to this court.

*Smalley and Adams, for the plaintiff, contended,* That a mere request by the surety upon the holder of a note to sue, and the

FRANKLIN,
January
1832.

Hogaboom
vs.
Herrick.

holder neglecting to do so, until the principal becomes insolvent, does not discharge the surety. As between the plaintiff and the signers, both are principals, and neither of the signers has the right to control the collection of the note. The surety could apply to chancery to compel the holder to prosecute, or he can pay the note, and pursue the principal himself. We understand the rule of law to be, that nothing can discharge the surety but an agreement upon the part of the holder, made with the principal, to enlarge the time of payment, or some alteration of the original contract.—(2 *Pick. Rep.* 612 ; 2 *J. C. R.* 563 ; 4 *Pick. Rep.* 382 ; 5 *Pick. Rep.* 307; 10 *East Rep.* 35 ; 1 *Aik. Rep.* 296.)

The agreement, as stated to have been made by the plaintiff to discharge the defendant, is not binding, because it was a contract without consideration, and not under seal. Even where there is consideration received from one of the signers of a note, and an agreement to discharge him is founded upon such consideration, if there were not a full satisfaction, the agreement is a *nudum pactum.*—(2 *Johns. Rep.* 448 ; 5 *East,* 230 ; 7 *Johns. Rep.* 206 ; 2 *Ver. Rep.* 209 ; 13 *Johns. Rep.* 87 ; 1 *Cowen,* 122. Where there is a covenant not to sue, it may be pleaded.—(2 *J. R.* 186 ; 4 *Bac. Ab.* 266.) It is contended that every contract in writing must be discharged in writing of as high a nature, as that by which the contract is created. A mere parol agreement may be discharged by parol before the cause of action accrues ; but not afterwards.—(2 *Con. Rep.* 138 ; 1 *Swift's Dig.* 300.)

The widow of Stockwell, offered as a witness by defendant to prove the note paid, was rightly excluded by the referees ; for she was administratrix of the estate of her deceased husband, and interested : and the wife cannot be a witness for her husband, whether dead or alive ; for public policy forbids it.—(2 *Term Rep.* 261 ; 4 *do.* 671 ; 6 *do.* 681 ; 2 *Stark. Ev.* 706 ; *Phil. Ev.* 64, 66.)

*Hunt, Beardsley and Foster, for the defendant, contended,* That the referees in making their report intended to be governed by the principles of law ; but they wholly mistook them. 1. The plaintiff was bound to put the note in suit against Ebenezer Stockwell, the principal, when requested by the defendant, who was surety. And the plaintiff's delay to sue, has discharged the surety from his liability.—(13 *Johns. Rep.* 174 ; 17 *do.* 384 ; 10 *do.* 597 ; 10 *East,* 34 *to* 38.)

2. The plaintiff choosing not to sue Stockwell, agreed to discharge the defendant from all further liability, and look to Stock-

FRANKLIN,
January,
1832.

Hogaboom
vs.
Herrick.

well alone. Stockwell was then able to pay, and the plaintiff waited three years, when he died poor, and unable to pay his debts. To make the defendant liable after this, would be unjust. —(*Baily on Bills*, 223 ; 2 *B. and P.* 61 ; 2 *Camp.* 185 ; 16 *Johns. Rep.* 70 ; 8 *Pick. Rep.* 122.)

3. If the defendant, after the death of Stockwell, promised the plaintiff to pay him the note, such promise was without consideration and void.

4. Mrs. Stockwell should have been admitted to testify, that her deceased husband in his lifetime paid the note to the plaintiff. She had no interest in the suit ; and the principle of law, that the wife cannot testify, for or against her husband, does not apply to a widow.—(*Phil. Ev.* 68 to 71 ; *Peak's Ev.* 151, 128 ; 11 *Mass. Rep.* 206 ; 2 *Strange*, 504 ; 1 *Hen. and Mum.* 154.)

*Opinion of the Court delivered by*

BAYLIES, J.—The defendant insists, that his requesting the plaintiff in 1825, to sue Stockwell, the principal debtor, and then informing the plaintiff, that he did not wish to stand surety for Stockwell any longer, and the plaintiff's neglecting for three years afterwards to sue Stockwell, till he died insolvent, discharged the defendant from his liability on the note. The surety has certain rights, and privileges, which are secured to him by law. In the case of *Hayes* vs. *Ward*, (4 *J. C. R.* 132,) *Kent, Chancellor*, says, " it is now considered a settled rule, that a surety may resort to chancery, if he apprehend danger from the creditor's delay, and compel the creditor to sue the principal debtor, though probably he must indemnify the creditor against the consequences of risk, delay, and expense."

If the surety request the creditor to sue the principal debtor, and tender the creditor ample security against risk, delay, and expence in such suit, and the creditor refuse or neglect to sue, I see no good reason, why the surety may not resort to a court of equity to compel a suit for his benefit. But a simple delay of the creditor, ever so long, after being requested to sue, would be no ground for a court of equity to discharge the surety from his liability. If the surety was desirous, that the suit should be commenced against the principal debtor, he had it in his power to apply to a court of chancery, in a reasonable time after his request, to compel the creditor to sue the principal debtor. But if the surety put off his application to the court for three years after his request, he was grossly negligent, and ought not to com-

FRANKLIN,
January,
1832.

Hogaboom
vs.
Herrick.

plain of the negligence of the creditor to sue, in discharge of his own liability. } If during the delay, the principal debtor fail, and become unable to pay the debt, this will not affect the right of the creditor to call on the surety for payment. I know of no case in chancery, where the court has enjoined the creditor not to sue the surety, simply on the ground, that the creditor has neglected to sue the principal debtor. But if the creditor, without the consent of the surety, varies the contract, or ties up his hands, so that he cannot sue the principal debtor, the court will discharge the surety. These principles are established by the following cases. The liability of a surety in a bond is not discharged by the delay of the creditor in suing for the debt, or by the circumstance of the principal debtor afterwards executing to the creditor another bond for a larger sum.—(*Eyer* vs. *Everett,* 2 *Russell,* 381.) A court of equity will not relieve a surety by bond upon the ground of the creditor having given time to the principal debtor, unless there has been an express, and positive contract between them for that purpose.—(*Heath* vs. *Key,* 1 *Young and Jarvis,* 434.) Mere delay of the creditor to call on the principal debtor for payment, does not discharge the surety, unless there is an express contract for that purpose. (*King* vs. *Baldwin,* 2 *J. C. R.* 357.) But if the creditor by agreement with the principal debtor varies the terms of the contract, by enlarging the time of performance without the consent of the surety, the latter is discharged.—(*Ib.*)

A court of law will not discharge a surety from his liability, where a court of equity would not do it. The same causes for the discharge of the surety are equally available in both courts.

It was decided by this Court, that the case *Paine* vs. *Packard,* 13 *John. Rep.* 174, is not law in this State—and that bail was not discharged, because, at his request, the creditor did not pursue the principal debtor, and take his property in execution to save the bail harmless.—(*T. Hubbard et al.* vs. *T. Davis et al.* 1 *Aik.* 296.) Now, if we apply the principles of law to the facts stated above, and relied on by the defendant, we cannot avoid seeing their insufficiency to discharge his liability, as surety to the note in question. Although he requested the plaintiff to sue the principal debtor, he offered the plaintiff no security to save him harmless against the consequences of risk, delay, and expense. And though the plaintiff neglected to sue the principal debtor, as he had a right to do, the defendant also neglected to apply to a court of equity to compel him to sue. If the defendant did not choose to take this course, he might have paid his note to the

FRANKLIN,
January,
1832.

Hogaboom
vs.
Herrick.

plaintiff, and sued the principal debtor, while he was solvent, and saved himself harmless. But it *seems* that the defendant neglected this till he was without remedy.

The report of the referees shows, that after the note fell due, in the fall of 1823, the plaintiff agreed that he would discharge the defendant from all liability on the note, and would not hold the defendant any longer as surety.—They called evidence of this agreement. The discharge was to be in writing, though it was not then executed. The referees have not found that there was any consideration for this agreement. Yet, if the plaintiff's assurances to the defendant, that he would discharge him, and would not hold him any longer as surety to the note, quieted the defendant, and prevented his applying to a court of equity to compel the plaintiff to sue Stockwell,the principal debtor,and collect the money of him on the note ; or prevented the defendant's paying the note, so that he could have recourse to Stockwell for the money, till after his insolvency, and death ; perhaps these assurances,so confided in, and producing these effects, should discharge the defendant from his liability. But whether the plaintiff's assurances were confided in, and produced these effects, were facts for the referees to find ; and they have not found them. The presumption is, that these facts did not exist. And when the referees considered, that defendant, after the insolvency and death of Stockwell, promised to pay the note to the plaintiff, they might find that the defendant placed no reliance on the agreement of the plaintiff to discharge him, and was not affected by it. And as there was no consideration for the agreement, it should be laid out of the case.

The case also shows that "the defendant offered to prove by the widow of Stockwell, that Stockwell in his life time paid said note to the plaintiff; but the referees decided that she could not be admitted to testify." It does not appear from the report of the referees, nor from affidavits, upon what ground the referees made this decision. The presumption is, that their decision was correct, unless the contrary appear.

The judgement of the county court in accepting the report of the referees, and rendering judgement thereon is affirmed with additional costs.