## AMOSKEAG BANK *v.* ROBINSON.

Where the liability of the indorser of a note or bill is fixed by operation of law, and he seeks indemnity of his principal, his safe course is to take up the note or bill, and proceed directly against him, in his own name.

The indorsee or holder of a note or bill has his election, to proceed against the principal, or any indorser; all being regarded as principals so far as the holder of the paper is concerned.

Where the indorser of a note has pointed out certain property, alleged to belong to the principal on the note, and the holder of the note has attached it, in the absence of other agreement, the indorser can not set up this proceeding as matter of defense, because the question of the legal application or misapplication of the funds arising out of such attachment can not arise properly under any issue pending, but can only form the foundation of a new suit or inquiry between the interested parties.

ASSUMPSIT, on a note for $315, dated February 5, 1858, signed by C. W. Baldwin, payable to the order of the defendant in three

months after date and indorsed: "Waiving demand and notice, Samuel H. Edgerly. Waiving demand and notice, D. L. Robinson."

Plea, the general issue. By agreement of the parties the case was tried by the court.

The note, being specially declared upon, was introduced in evidence by the plaintiff. The defendant was then called by his counsel and testified. The defendant's evidence tended to show that he loaned Baldwin $300, and received therefor the note in suit, indorsed by Edgerly; that the defendant afterward indorsed the note; that the plaintiff discounted it for the defendant; that after it became due the cashier of the bank notified the defendant that it was due and not paid; that the defendant informed the cashier that the note might be secured by attaching a valuable horse which belonged to Edgerly; that the defendant informed the cashier where the horse was; that the defendant did not know, until after the horse was attached, that the plaintiff had any claim against Edgerly except this note; that the plaintiff and defendant understood that the plaintiff should bring a suit on the note against Edgerly, cause the horse to be attached, and apply the amount which might be recovered, in payment of the note; that he informed Stevens, the officer who attached the horse, when he had the writ, and before the attachment, where he could find the horse, and that the defendant was never called upon to defend the action *Sanborn* v. *Stevens*, hereafter mentioned.

The following facts were found by the court:

September 27, 1859, the plaintiff brought a suit upon the note against Edgerly, and another suit upon a judgment against Baldwin, Edgerly, and one Duxbury, and caused said horse to be attached in both suits by one Stevens, a deputy sheriff. All the defendants in those suits were defaulted January term, 1860, and those actions are still upon the docket, and judgment has not been rendered in either of them. The horse was taken from Stevens on a writ of replevin, brought by one Sanborn against Stevens. In that replevin suit Stevens recovered judgment; the damages were assessed at $400; that sum was paid to Mr. Foster, the attorney of the bank, and who also appeared for Stevens in the replevin suit, and is still in his possession, and no part of it has been appropriated or applied by the bank to the payment of the note, but the bank claims that it may be applied in satisfaction of the judgment which it may recover in its suit upon the judgment against Baldwin, Edgerly & Duxbury. The defendant claims that he is discharged from all liability upon the note, by the plaintiff obtaining security by the attachment under the circumstances, the $400 being sufficient to pay the note.

Stevens was called as a witness by the defendant, and testified that at or about the time he received the writ against Edgerly, and the writ against Baldwin, Edgerly and Duxbury, he thinks he was informed by Mr. Foster, or the cashier of the bank, that Robinson would tell him where the property to be attached was, and that his impression is that he saw Robinson, and that Robinson described

Edgerly's horse, and told him where he could find it, and that upon such information from Robinson he found the horse.

The plaintiff proposed to introduce evidence to rebut the testimony of the defendant, but the court being of opinion that the testimony of the defendant, if true, would be no defense, found the conclusion of law from the facts found, to be, that the defendant did promise in manner and form as the plaintiff hath thereof declared against him, and assessed the plaintiff's damages at $315 and interest, to be reckoned from the time when the note became due, to the rendition of judgment, to which finding the defendant excepted, and the questions of law were reserved.

*Morrison, Stanley & Clark,* for the defendants, referred the court to the following authorities : *Baker* v. *Briggs,* 8 Pick. 122 ; *N. H. Savings Bank* v. *Colcord,* 15 N. H. 122 ; *Watriss* v. *Pierce,* 32 N. H. 573 ; also, *Harris.* v. *Brooks,* 21 Pick. 195 ; *Ayer* v. *Tilton,* 42 N. H. 407.

*H. Foster,* and *George Y. Sawyer,* for the plaintiffs.

NESMITH, J. The relation established between the parties to this suit appears to be strictly that of indorsee and indorser, with the individual liabilities affixed by law to such relation. The defendant was original payee of the note, and before its maturity he negotiated it to the plaintiffs for value received. He indorsed the note, waiving demand and notice. The defendant then, having received his full consideration directly of the plaintiffs, was, of course, bound to restore it to them upon due demand, unless some new contract has intervened, which may operate to discharge him from his legal liability to pay it. The defendant says, that in consequence of having shown certain property to the officer who held the writ in favor of the plaintiffs against Edgerly, another indorser on the note, and having shown that this property was actually attached in this suit, and because such proceedings have been had under said attachment, and in another suit testing the title to that property, whereby the attorney to the plaintiffs has realized money enough of the property of Edgerly to satisfy their claim, he, the defendant, is now discharged, notwithstanding the bank claims to hold another demand against said Edgerly, upon which they assert the right to apply the same funds.

It appears to us the defendant offers an insufficient defense. His claim is now premature. The right appropriation of the funds in the hands of the attorney of the bank may be very material to him, but under the present issue he can not set up the refusal of the bank to apply these funds. This may be the proper subject of inquiry at a future day. It now does not appear here, that even if the bank were successful in obtaining sufficient property of Edgerly to satisfy the note in suit, they are under any obligation to suspend their suits against the defendant, or any one else. To save them costs, and to avoid the payment of costs, they may proceed to judgment, and obtain their executions. Nor are the plaintiffs obliged to encounter the risks incidental to the trial of the title to Edgerly's property, with-

out suitable indemnity from those more interested than they are. So far as relates to the bank, both the signer or drawer of the note and its indorsers are all principals, and to be treated accordingly.

If a new bargain were made, by virtue of which the defendant, as indorser or conditional surety, could be discharged from his contract, it must be presumed to be founded on some just consideration, so as to operate as a mutual contract. The bargain, or risks of it, must not be entirely for the defendant's advantage.

It is only the performance of a collateral agreement, if one existed, which makes out a complete defense to a note or bill. If the agreement be still executory in its character, it must be enforced in a new suit. The court here is in no situation to enforce such an agreement as the defendant now sets up ; much more to test the truth of its existence. The subsequent or collateral contract must not be doubtful or inferential in its terms. *Allen* v. *Kimball*, 23 Pick. 473 ; *Cushing* v. *Wyman*, 44 Me. 121 ; *Payne* v. *Ladue*, 1 Hill 116 ; *Woodman* v. *Eastman*, 10 N. H. 359. The indorser of a bill or note, though standing in the place of a surety, is answerable upon his independent contract, and it is his duty to take up the bill when dishonored. *Kemble* v. *Thorn*, 16 Johns. 152 ; *Davis* v. *Higgins*, 3 N. H. 231 ; *Mahurin* v. *Pearson*, 8 N. H. 539 ; *Bellows* v. *Lovell*, 5 Pick. 307 ; *Hogeboom* v. *Herrick*, 4 Vt. 136. It makes no difference if the surety offers indemnity ; *Adams Bank* v. *Anthony*, 18 Pick. 255 ; nor does a refusal to prosecute a suit against the principal, which has been already commenced, discharge the surety. *Bellows* v. *Lovell, ante.* Pothier's rule is, " Let the surety, if he would escape liability on the note, pay the debt, and sue the principal himself, or come in and prosecute the suit pending in the name of the creditor, but at his own cost and risk. The surety refusing to do this, the creditor may abandon his suit against the principal, and sue the surety." Evans' Pothier on Obligations 261. There are some exceptions to the aforesaid general rules, where it has been held that a parol declaration to the surety, by the holder, that he would exonerate him and look to the principal alone, would be a good defense, on the ground that it lulls the party into security and prevents him from obtaining his indemnity. It would be a fraud on the part of the holder afterward, contrary to such assurance, to call upon the surety. Parsons on Notes 503 ; *Harris* v. *Brooks*, 21 Pick. 195 ; *Ayer* v. *Tilton*, 42 N. H. 407.

Upon the evidence, as stated in the case, we do not see that the defendant has brought himself within the principle of the aforesaid exceptions. It will be soon enough for the plaintiffs to elect how or where the avails of the Edgerly house may be applied when they obtain their judgment in these cases, and deliver their executions, with their instructions, to the officer. It is for the plaintiffs then to take their election ; nor can the defendant insist upon an earlier appropriation of the funds in dispute. It is soon enough for the defendant to complain of a misappropriation or misapplication of the funds in the plaintiffs' hands, after he has given them proper opportunity to apply the test.

The ruling of the court was, therefore, proper, and there must be
*Judgment on the finding of the court.*