83  431
89   67

CASE 63—PETITION ORDINARY—DECEMBER 12.

## Brooking v. Farmers' Bank.

APPEAL FROM SCOTT CIRCUIT COURT.

1. A PERSONAL REPRESENTATIVE WHO HAS OVERPAID A CREDITOR under a mistake as to the solvency of the estate can not recover the amount so overpaid if the creditor has been prejudiced by his failure to comply with the law governing the administration. and settlement of insolvent estates, or by his bad faith or negli- gence in any respect. Therefore, where sureties for the debt paid, have been released by reason of the negligence of the personal representative, he can not recover.

   An administrator paid a creditor in full without availing himself of the time and means afforded by law to ascertain the condition of the estate. In this action, begun nearly five years thereafter,. the administrator seeks to recover back the amount so paid upon the ground that the estate has been consumed and rendered in- solvent by the payment of a debt adjudged to be a preferred claim in an action involving the settlement of the estate, to which neither the creditor nor the sureties in the note were made parties. Held—That as the sureties are released by reason of the delay and negligence of the administrator, he can not recover of the creditor.

2. SURETIES IN A NOTE having been induced to believe, for nearly five years, that the note had been satisfied, and thereby deprived. of the opportunity of seeking indemnity, are released.

·GEO. E. PREWITT FOR APPELLANT.

1. The statute is plain. The personal representative, whenever he has
   paid a creditor an undue proportion of his demand, is entitled to
   recover the amount of the overpayment. (Gen. Stat., chapter 39,
   article 2, section 42; Lawson's Adm'r v. Hansbrough, &c., 10 B.
   M., 147.)
2. The sureties are not released. A surety is never released from
   liability on account of an act done by the creditor *in entire good
   faith*, and which appeared at the time to be for the benefit of the
   surety. (Calloway v. Snapp, 78 Ky., 561; Aaron v. Mendel, *Ibid.*,
   427; Story's Eq. Juris., sections 324, 326; Northern Bank of Ky.
   v. Cook, 13 Bush, 342; Watson v. Poage, 42 Iowa, 582; White &
   Tudor's Leading Cases, vol. 2, part 2, 4th ed., pages 1877–8; Lee's
   Adm'r v. Reed, 4 Dana, 118.)
3. The plaintiff is not precluded from recovering, unless he acted in
   bad faith, or did some act of improper, officious or unwarranted
   intermeddling, which prevented the sureties from seeking indem-
   nity, which it does not appear that he did.
4. The settlement of the decedent's estate in the Court of Common
   Pleas is *prima facie* correct as against the defendants, although
   they were not parties to the suit. (Fauntleroy v. Lyle, 5 Mon.,
   267; Burns v. Benton, 1 A. K. Mar., 258; Logan's Adm'r v. Trout-
   man, 3 A. K. Mar., 66; 2 Litt., 346; 5 Litt., 121.)

A. DUVALL FOR FARMERS' BANK.

Appellant was guilty of the grossest negligence ·in not making both
the creditor and the sureties parties to the suit against him by the
ward of his intestate praying a settlement of his accounts as
administrator, which was, in substance and in form, a suit to
settle an insolvent estate, and having been thus negligent he can
not recover. (Civil Code, section 428.)

W. S. DARNABY FOR APPELLEES THOMAS AND BUTLER.

"The sureties are released by reason of the negligence of the creditor in
accepting payment without consulting them, and of the adminis-
trator in not making them parties to the action against him for a
settlement of his accounts. (Calloway v. Snapp, 78 Ky., 563; Aaron
v. Mendel, *Ibid.*, 427; Northern Bank v. Cook, 13 Bush, 344.)

·JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

May 5, 1874, W. S. Brooking, as principal, and
Thomas and Butler, as sureties, executed a note to
the Farmers' Bank of Kentucky due September 1,
1874, which, on the day it matured, A. U. Brooking,

as administrator of W. S. Brooking, who had in the meantime died, paid off, amounting, principal and interest, to one hundred and fifty-five dollars.

This action was instituted August 22, 1879, by the administrator, to recover of the bank the whole amount so paid in 1874, and interest thereon, in virtue of section 42, article 2, chapter 39, General Statutes, which is as follows:

"When a personal representative shall pay to a creditor an undue proportion of his demands, or to a distributee or devisee a part or all of his share or legacy under a mistake as to the solvency of the estate or otherwise, such personal representative may recover from the creditor, distributee, or devisee the amount of the overpayment with interest thereon."

Subsequently an amended petition, making Thomas and Butler parties, was filed. And March 3, 1880, the bank filed its answer, denying the right of the plaintiff to recover, but asking, in case of a recovery, that the sureties might be adjudged liable to it, and for that purpose the answer was made a cross-petition.

Judgment having been rendered dismissing the petition and cross-petition, the plaintiff appeals.

From an agreed statement of facts it appears that in the year 1858 W. S. Brooking was appointed and qualified as guardian of his nephew, G. Brooking Beaty, then about four years of age, and continued to act as such until his death, though he never made any settlement as required by law.

A. U. Brooking was called on as administrator,

and made a settlement of the guardian's accounts in the county court, which was admitted to record in May, 1877, and showed a balance in favor of the ward against the estate of about one thousand five hundred dollars. But in July, 1877, G. Brooking Beaty instituted an action in the court of common pleas to surcharge the county court settlement, the result of which was a judgment in his favor rendered in December, 1878, for about thirteen thousand dollars. In that action proceedings were also had for the settlement of the estate of W. S. Brooking, deceased, and the sum of about two thousand two hundred dollars was found in the hands of the administrator, which he was required to pay to the plaintiff, no credit being allowed for the amount paid by him in 1874 to the Farmers' Bank. The personal estate being thus exhausted, the real estate of the deceased, and also a tract of land belonging to a surety in the guardian bond were sold, and after applying the proceeds thereof, in addition to the amount in the hands of the administrator, towards the satisfaction of the plaintiff's debt, which was adjudged to be a preferred claim, there was still a balance of about one thousand nine hundred dollars unpaid.

It farther appears that neither the Farmers' Bank nor the sureties in the note were parties to that action; nor was a repayment of the amount sued for in this action demanded of the bank until May, 1879.

Previous to the act of 1850, which was embodied in the Revised Statutes (see section 40, chapter 37),

and is similar to the section of the General Statutes quoted, there was no statute expressly authorizing recovery by a personal representative who had paid an undue proportion of the creditor's demand under a mistake as to the solvency of the estate of the decedent.   And in Lawson v. Hansbrough, 10 B. M., 147, the statute of 1839 was construed to rather negative his right to relief.   Nevertheless, it was then held that cases might occur in which an executor or administrator would be entitled to relief. "But," said the court, "to have a good title to such relief, it is indispensable that there should have been no negligence on the part of such personal representative, and that he should have acted with due caution in the payment of the assets.   The mere fact that he labored under a mistake at the time in reference to the sufficiency of the assets for the payment of debts does not give him a right to the interposition of a court of equity.   The mistake may have resulted from his own negligence in not using the requisite diligence in ascertaining either the amount of available assets or the debts for which the estate was liable."

Although the act of 1850, as well as the present law, in terms gives a right of recovery to the personal representative not previously conferred by express statutory enactment, we do not think it was intended to afford him relief from his mistake in every such case unconditionally and entirely without regard to the question of good faith and diligence on his part.   On the contrary, if the creditor has been prejudiced by his failure to comply with

the law governing the administration and settlement of insolvent estates, or by his bad faith or negligence in any respect, he ought not to recover.

The administrator does not seem to have availed himself of the time and means afforded by law to ascertain the condition of the estate before paying the demand of the Farmers' Bank. But within a short time after his appointment, and on the day the note fell due, he voluntarily paid it in full. And in this action, commenced nearly five years thereafter, he seeks to recover the amount back upon the ground that the estate has been consumed and rendered insolvent by the payment of the preferred debt of Beaty in pursuance of a judgment rendered in an action instituted by him against the heirs. and administrator.

A settlement of the estate of the decedent under chapter 3, title 10, Civil Code, was involved in that action, and the proceeding therefor was actually had. Yet, although it was made, by law the duty of the administrator to make the Farmers' Bank, if not the sureties in the note, parties to that proceeding, he negligently or in bad faith failed to do so, and they were thus deprived of the right to either contest the preferred claim of Beaty or call in question the transactions of the administrator himself.

The Farmers' Bank was bound to accept the payment of the note tendered by the administrator, or lose interest on it from that time, as well as hazard its right to look to the sureties; and so far as this record shows, did accept it in good faith, without

any notice of the claim of Beaty or insolvency of the estate until a short time before this action was commenced.

It seems to us, therefore, that, though the judgment mentioned be regarded as evidence of the insolvency of the estate, the administrator ought not to recover of the Farmers' Bank unless, when this action was commenced, it could maintain its cross-petition against the sureties in the note. For, if they had been discharged, it resulted from the negligence and bad faith of the administrator, and in that case it would be extending the operation of the statute for his benefit farther than reason or analogy authorizes to permit him to recover of the bank.

The mere acceptance by the bank of payment of the note did not of itself have the effect to release the sureties, for that payment was made subject to the right of the administrator, under the statute, to recover it back in case of the insolvency of the estate; and if he had, in good faith and in a reasonable time, commenced the proceeding provided by the Civil Code for the settlement of insolvent estates, and made the Farmers' Bank a party thereto, he might have recovered the amount paid by his mistake; for the discharge thereafter of the sureties, if it had occurred, would have been the fault of the bank, and not of the administrator; but, as has been said, the surety is a favorite of the law, and when any act has been done by the obligee that may injure him, the court is very glad to lay hold of it in his favor.

In this case the sureties were induced to regard the note as satisfied, and were thereby deprived of the opportunity of seeking indemnity, either from each other or from the estate of the deceased principal in the note; and it may be safely said, according to both reason and authority, that the sureties in a note would be discharged in any case where the obligee has for nearly five years kept them lulled with the assurance the debt has been paid; for, as said by this court in Aaron v. Mendel, 78 Ky., 427, when the creditor has been guilty of bad faith towards a surety, the court will not stop to inquire whether he has been actually injured or not.

That was an action by a ward to recover of her guardian and his surety, the defense by the latter being, that about three years before the institution of the action, she had released the guardian of all claim against him. It, however, appeared that the release was unfairly procured, and the court held that if it had been attacked within a reasonable time after it was obtained, or after the influences which induced its execution were removed, and after she was in a condition to assert her rights, it would have afforded no protection to the surety, though he did not participate in the fraud of the guardian; but, said the court, the plaintiff having kept the surety so long in a position in which he was authorized by her conduct to believe he was fully discharged, and in which he was deprived of all right to seek indemnity, she was guilty of such bad faith toward him as ought, in equity and good conscience, to prevent her from recovering.

The case of Kerby v. Taylor, 6 Johns. Ch'y, 248, was cited, where Chancellor Kent held that a release of the principal by the ward without the knowledge or consent of the surety, and acquiescence in the release for a period of twenty months, there being no pretense of fraud set up, was "a complete exoneration of the surety. He had a perfect right to regard the discharge as valid, and it deprived him in the meantime of the opportunity of obtaining indemnity."

Though bad faith may not in this case be imputed directly to the bank, the effect was the same as to the sureties. They were induced to regard the note as satisfied, and thereby deprived of the opportunity to indemnify themselves, and ought not, after such length of time, be held liable.

When the administrator, without being bound to do so, paid the debt to the bank, the sureties were liable, for nothing had been done to discharge them. They have since become released by the bad faith, not of the bank, but of the administrator. In our opinion, therefore, the latter, and not the former, should suffer the loss.

Wherefore, the judgment is affirmed.