## AUCHAMPAUGH v. SCHMIDT.

Surety: ON PROMISSORY NOTE: DISCHARGE: ESTOPPEL. In an action upon a note made in the state of Illinois, where all the parties thereto resided, in which one L. was the principal maker, defendant herein was surety, and S., plaintiff's intestate, was payee, the answer was, in substance, that defendant, desiring to move to Iowa, went to S., and stated that fact to him, and asked him to release him from the note, and stated that, if not released, he would proceed to have the note collected from L. (the note then being due and L. being solvent), or that he would serve the notice for his release as surety; that thereupon S. told him that he could go to Iowa, that he (S.) would look to L. alone for the note, and that he released defendant from the note; that defendant relied on said promise, and served no notice, and took no steps to have the note collected from L., and that L. afterwards became insolvent. *Held* that the alleged facts would estop the plaintiff from suing defendant on the note, and that, since there was evidence tending to sustain the answer, it was error to direct a verdict for plaintiff.

*Appeal from Buchanan District Court.*—HON. D. J. LENEHAN, Judge.

FILED, MAY 20, 1890.

ACTION on a promissory note. The district court directed a verdict for the plaintiff, and from a judgment thereon the defendant appeals.

*Woodward & Cook*, for appellant.

*E. E. Hasner*, for appellee.

GRANGER, J.—It is to be regretted that this cause must be for the fourth time reversed in this court. At the trial, in which judgment was entered, from which the last former appeal was taken, there was judgment for defendant, and the plaintiff appealed. At that trial in the district court the plaintiff moved the court, at the close of the evidence, to direct a verdict for him, and it was held in this court that it was error to refuse the motion. At the last trial in the district court, at the close of the evidence, the plaintiff presented a similar motion, which the court sustained; and, as we think it was then error to sustain the motion, the purpose of this opinion will be to mark the distinction between the records on the two appeals. The opinion on the last former appeal is to be found in 77 Iowa, 13. The statement of the case on that appeal presents two defenses: *First*, the statute of limitations; and, *second*, estoppel. The same defenses are presented on this appeal. On that appeal only the question of estoppel was considered, and, with our view of the case, it is the only one essential for consideration on this appeal. By turning to the opinion on that appeal, it will be seen what were the facts pleaded, what facts were determined by the verdict, and what was the rule of law upon which a reversal was had. To plainly mark the distinction, the same method, as far as practicable, should govern in

this opinion.   In the interest of clearness to those not
familiar with the record, it may be well to state that
the note in suit was given in the state of Illinois on the
twentieth day of May, 1870, to one Schneider, now
deceased, and of whose estate the plaintiff is adminis-
trator.   The note matured one year after date.   The
note was signed by Charles Leopold and the defendant,
the defendant being surety only.

Looking to the former appeal, it will be seen that
the facts there pleaded were "that after the maturity
of the note, and when defendant was about to remove
to this state, the intestate released defendant from lia-
bility, and promised to look alone to the principal for
payment; the principal then being solvent, and is now
insolvent."   It will also be seen that the verdict on the
trial determined the facts as follows :   That "defendant
signed the note as surety for Charles Leopold, the other
maker, and the fact of his suretyship was known to the
payee, plaintiff's intestate, when he accepted it.   At
that time the parties all resided in Illinois.   After the
maturity of the note defendant was about to remove to
this state, and, at his request, his wife called on the
holder of the note, and requested him to release defend-
ant from liability thereon, and he then promised to look
to Leopold for payment, and stated that defendant need
give himself no further concern about it.   This promise
was communicated to defendant, and he heard nothing
further concerning the matter until after the death of
the holder of the note, which occurred some eight years
afterwards.   At that time Leopold had abundance of
property out of which the debt could have been made,
but is now insolvent."

Upon that state of facts, both as to pleading and
proof, we held that the court should have directed a
verdict for the plaintiff.   The next logical inquiry is,
why ?   The opinion answers the query, and designates
two rules, either of which, if supported by the neces-
sary facts, might sustain defendant's plea of estoppel.
But it is said the facts "do not bring it within either

of the rules." It is quite clear from the opinion that this court regarded the effort at that time to be to sustain the plea on the theory of a contract, and not by matter *in pais*. That view was justified both by the facts pleaded and proven. Let us look to the present record for a distinction. After the case was remanded, the defendant filed an amendment to his answer, as follows: "That before leaving Illinois he went to Schneider, the payee of the note, and told him that he wanted him to release him [Schmidt] from the note in suit, which he had signed as surety, and that if he [Schneider] did not do so he would proceed to have the note collected from Leopold, or serve the notice for his release as surety upon the note; that thereupon Schneider told him he could go to Iowa, and he would look to Leopold, who was good for the note, and he released defendant from the note; that defendant relied upon said promise, and did not serve any notice, and took no steps to have the note collected from Leopold; and defendant avers that the plaintiff is now estopped from collecting said note from this defendant."

This was clearly an attempt to estop the plaintiff because of the declarations and conduct of Schneider, and, as the pleading is not assailed, it must be regarded as sufficient. It is clearly distinguishable from the former pleading, in this: That it avers an intent to collect the note from Leopold as he might do under the law, and that, because of the statements and conduct of Schneider, he neglected so to do until Leopold became insolvent. On the last trial in the district court, there was no verdict, and we are left to the evidence to know the facts, and the inquiry is as to whether the testimony is such that the jury should have been permitted to pass upon the question. Mrs. Schmidt, wife of defendant, testified that, at the request of her husband, she, with her daughter Mrs. Matthews, went to see Schneider before they left for Iowa, to learn if he would release defendant from the note, and that she had a conversation with him in regard to the note in the presence of

her daughter, and that she afterwards reported to her husband what Schneider told her. Under the provisions of the statute, she could not relate the conversation. The following admissions then appeared in the record: "It is admitted that Charles Leopold, if present, would testify that no suit has ever been brought against him on said note in suit; that Charles Leopold has lived in Batavia continuously ever since the giving of said note, and still lives there. It is also admitted that Josie Matthews, if present, would testify that she heard Schneider, the payee of the note, say that defendant signed said note as surety, and that defendant could move his family to Iowa, and that he need not look after said note or pay any further attention to it; that Leopold was good for it, and he would collect it from him, and release defendant." The defendant testified that, before he left Illinois, he requested his wife and daughter to go and see Mr. Schneider in regard to his release from the note, and that after he came to Iowa his daughter reported to him what Schneider said to his wife about his release, and that, because of such report, he did not have suit brought against Leopold on the note. Plaintiff offered no testimony, and that stated is practically without dispute in the record. From it, what could the jury have found? Certainly the essential facts determined by the verdict on the former trial, and, in addition, that Schneider knew that defendant intended to look after the pay from Leopold, for he said to the wife, "He need not look after the note, or pay any further attention to it;" that defendant, because of such statements, brought no suit against Leopold, and Leopold became insolvent. Now, it is said, in the opinion on the former appeal, that "it may also be regarded as settled that, if the creditor promises to look alone to the principal for payment, and the surety, in reliance on that promise, * * * is induced to omit to procure security or otherwise changes his position with reference to the principal, he is thereby discharged." Concede, in this case, that, but for the promise of

Schneider to release defendant, he would by suit have compelled Leopold to pay the note while solvent, and would not the rule of law apply as well as if he had neglected to obtain security which he had intended to do? The act omitted because of the promise would in either case have protected the surety. With the facts conceded which the testimony tends to establish, it is a case in which, because of the promise of Schneider to look to the principal, the defendant was induced to omit an act which, if done, would have resulted in his protection. Such facts bring the defendant clearly within the rule of estoppels. Appellee says, in argument, that he does not see in what respect the case now differs from the record on the former appeal, and asks a comparison. This we have endeavored to make, and we think the difference obvious.  REVERSED.