LOUIS PIZITZ DRY GOODS COMPANY, Appellant, *v.* NEW YORK HAMILTON CORPORATION, Respondent.

First Department, February 14, 1930.

*Isadore Shapiro*, for the appellant.

*Harold P. Seligson* of counsel [*Wolfgang S. Schwabacher* and *Edward Garfield* with him on the brief; *Hays, Hershfield & Wolf,* attorneys], for the respondent.

McAVOY, J. The action is on a guaranty executed by the defendant of the payment of certain notes of one Henry S. Duncan. The guaranty recites that it is executed in consideration of a pledge to defendant by Mr. Henry S. Duncan of " substantial assets." The guaranty by its terms is " in accordance with an agreement between your company [plaintiff] and Mr. Duncan, copy of which has been filed with us " (defendant).

The contract between the plaintiff and Duncan is for the sale and purchase of certain hotel equipment for which Duncan was to pay partly in cash and partly by a series of promissory notes to be made by Duncan *personally* and guaranteed by the defendant.

The plaintiff seeks to impose liability upon the defendant under

its guaranty, not by reason of the non-payment of any notes executed by Duncan personally, but by reason of the non-payment of four promissory notes executed by Duncan Bankhead Company, Inc.

The plaintiff's theory seems to be that the corporate notes were inadvertently and by mistake given instead of personal notes of Duncan and that defendant was a party to the transaction and agreed that this might be done.

The answer consists of a general denial and an affirmative defense. It is alleged that on June 4, 1926, Duncan gave to plaintiff a series of twenty-one promissory notes made by him personally, maturing monthly until August 1, 1928; that on June 30, 1926, Henry S. Duncan, in order to indemnify defendant on its guaranty, delivered to it his promissory note for $150,000 and deposited with it securities and property of an estimated value of $1,500,000; that on November 30, 1926, Duncan Bankhead Company, Inc., delivered to plaintiff its four corporate notes set forth in the complaint, maturing October, November and December, 1928, and January, 1929, respectively.

It is further alleged that in January, 1927, negotiations were carried on between the plaintiff, the defendant and one H. P. Heiss, looking towards protecting the defendant from any loss under its guaranty and imposing the financial obligation to meet the notes on the said Heiss and/or his principals in the place of the defendant and transferring to Heiss the collateral security held by defendant.

These negotiations took place at a time when many of the notes executed by Duncan personally as well as the corporate notes were unmatured.

During the course of these negotiations, it is alleged, the plaintiff, with knowledge of the purposes of the negotiations, represented that, and/or acquiesced in the assumption that, the contingent liability of the defendant, under its guaranty, on any notes held by the plaintiff, was limited solely and exclusively to the notes made and executed by Duncan personally, and that defendant was not liable on the corporate notes now in suit. This occurred in the presence of defendant and of Heiss, and the plaintiff intended that they should rely thereon.

The answer then avers that in reliance upon this representation and/or acquiescence of the plaintiff, the defendant entered into a contract with the Continental Properties Corporation, one of the principals represented by said Heiss, whereby defendant assigned to said corporation a large part of the securities held by it as collateral for Duncan's obligation to indemnify it on the guaranty. In addition, defendant assigned to said corporation any and all claims which it had against Duncan except its right to reimburse-

ment for any payments made by it under its guaranty of Duncan's personal notes held by plaintiff, thereby divesting itself of any right to reimbursement against Duncan if it should pay the notes of the Duncan Bankhead Company, Inc.

It is asserted that these facts are sufficient to constitute an estoppel *in pais*, to wit, a representation by the plaintiff, intending defendant to rely thereon, and substantial change of position by defendant in reliance on such representation.

But we think the matters pleaded do not constitute an estoppel. The defendant pleads a legal conclusion, that is, that it relied upon plaintiff's representation that the defendant is not liable on the notes in suit. It is established that to constitute an estoppel, the representation relied upon must be one of fact and not of law. Paragraph " Ninth " of the complaint sets forth that the defendant procured from Henry S. Duncan and delivered to the plaintiff the four promissory notes in question, signed by " Duncan Bankhead Company, Inc., Henry S. Duncan, President," and indorsed " Henry S. Duncan." Paragraph " 2 " of defendant's answer " denies each and every allegation set forth in the paragraph of the complaint marked and designated ' Ninth.' " Thus, the defendant could not have done or parted with anything as a consequence of any representation by the plaintiff, because from the very inception of the transactions between the parties it insisted that it never became liable on the notes in controversy. According to defendant's own theory, there were not at any time any negotiations or representations regarding these notes. Such negotiations as were had did not have any relation to these notes in suit, because the defendant affirmatively avers that its guaranty never covered or had relation to these notes.

The defendant had no basis for relying upon any representation which the plaintiff might have made. The theory of estoppel is predicated upon fraud. Here the defendant acted all along as if it was not liable on the notes in suit, that they were not Duncan's notes, and that the guaranty covered only Duncan's notes; hence, that the defendant at no time had any connection or concern with the notes in suit.

The order appealed from should be reversed, with ten dollars costs and disbursements. The plaintiff's motion should be granted and the alleged separate defense stricken out, with ten dollars costs.

DOWLING, P. J., and MERRELL, J. concur; FINCH and PROSKAUER, JJ., dissent.

PROSKAUER, J. (dissenting). This is an appeal from an order denying plaintiff's motion to strike out as insufficient a separate

defense interposed in the defendant's answer. In the complaint it is alleged that one Henry S. Duncan made an agreement in writing with the plaintiff, by which the plaintiff was to sell and Duncan to buy certain equipment for the Bankhead Hotel at Birmingham, Ala., and that Duncan was to pay the price of such merchandise amounting to $150,000, $5,000 in cash and the remainder by promissory notes to be executed by Duncan. The agreement provided that the notes were to be guaranteed by the defendant. Subsequently a guaranty in writing was executed by the defendant, which stipulated " that in consideration of a pledge to this corporation by Mr. Henry S. Duncan of substantial assets, we hereby guarantee the payment to your company of Mr. Duncan's notes at their several maturities " to an amount not exceeding $150,000, " all in accordance with an agreement between your company and Mr. Duncan, copy of which has been filed with us." Thereafter, in purported compliance with his obligation, Duncan delivered to the plaintiff a number of promissory notes made not by himself but by the Duncan Bankhead Company, Inc., a corporation, of which he was president. It is further alleged that the purported execution of said notes by the Duncan Bankhead Company, Inc., was a mistake and that the said notes were intended to be the notes of Duncan personally and to be covered by the terms of the guaranty. Judgment is sought against the defendant under its guaranty for these notes made by Duncan Bankhead Company, Inc.

In the separate defense it is alleged that collateral security of the value of $150,000 was deposited by Duncan with the defendant corporation to indemnify it on its guaranty; that in January, 1927, negotiations were in progress between one H. P. Heiss and the defendant, by which Heiss was to be substituted for the defendant as guarantor to the plaintiff and the collateral security turned over to him. It is further set forth that " the plaintiff, acting through its duly authorized officer and/or agent, Louis Pizitz, with knowledge of the purposes and/or results sought to be obtained, represented that and/or acquiesced in the assumption that the contingent liability of the defendant on any notes held by the plaintiff was limited solely and exclusively to the contingent liability of the defendant on the notes referred to in paragraph ' 8 ' of the answer [i. e., notes payable on or before October 1, 1928] and that the defendant was not liable on the notes described in paragraph ' 10 ' of the answer [i. e., notes payable subsequent to October 1, 1928]." The notes set forth in paragraph 8 of the answer are the individual notes of the defendant Duncan; those set forth in paragraph 10 of the answer are the notes purported to have been executed by the Duncan Bankhead Company, Inc. It is specifically alleged also that this

representation and acquiescence were made to and in the presence of the defendant and Heiss and that the plaintiff intended that the defendant and Heiss should rely thereon; that in reliance thereon the defendant transferred a large part of the collateral which it held to certain corporations represented by Heiss and assigned all claims which it had against Duncan excepting those in connection with the guaranty of the notes made by Duncan personally and payable before October, 1928; and that in similar reliance it executed to Duncan a release from all liability to the defendant, except those arising out of the guaranty of his personal notes payable before October 1, 1928. The defendant urges that these facts, if established, would constitute an estoppel of the plaintiff's claim against it on the corporate notes.

Whether we regard these representations as of fact or of law or as promissory representations, the result is the same under the authorities. The surety would be released from liability where the creditor tells the surety that he will look to the principal alone and will not call upon the surety in any event and the surety in reliance thereon changes his position by releasing securities held for his indemnity. (*Harris* v. *Brooks*, 21 Pick. 195; *Carpenter* v. *King*, 9 Metc. 511; *Auchampaugh* v. *Schmidt*, 80 Iowa, 186; 45 N. W. 567; *Bank* v. *Haskell*, 51 N. H. 116; Stearns Suretyship [3d ed.], p. 171; Brandt Suretyship [3d ed.], § 268; 21 Corpus Juris, 1142, § 145.) (See, also, *Thornburgh* v. *Madren*, 33 Iowa, 380; *Bullock* v. *First Nat. Bank*, 196 id. 522; 194 N. W. 930; *White* v. *Walker*, 31 Ill. 422; *Brooking* v. *Farmers' Bank*, 83 Ky. 431; *Baker* v. *Briggs*, 8 Pick. 122; *Wilkins* v. *Hanson*, 119 Minn. 399; 138 N. W. 418; *West* v. *Brison*, 99 Mo. 684; 13 S. W. 95; *Bank of Neelyville* v. *Lee*, 193 Mo. App. 537; 182 S. W. 1016; 196 Mo. App. 496; 196 S. W. 43; 208 id. 143; *National Bank of Commerce* v. *Gilvin*, 152 id. 652.) In *Carpenter* v. *King* (9 Metc. 511), SHAW, Ch. J., wrote: " We consider it well settled by numerous authorities, that when a creditor who knows that one debtor is a surety, gives him notice that the debt is paid by the principal, and such debtor, in consequence, changes his situation, as by surrendering security, or forbearing to obtain security when he might, or otherwise suffers loss by it, he is discharged. And although the debt has not been paid, and such notice was given by mistake, and without any fraudulent design, it is a mistake made at his own peril, and he shall rather bear the loss than throw it upon one who has been misled by it."

This principle is recognized in *Howe Machine Co.* v. *Farrington* (82 N. Y. 121, 130), which held that a mere expression of opinion that the principal will pay and that the surety will probably not

be called upon would not release the surety. But ANDREWS, J., writes: " This statement at most can be regarded only as the expression * * * of a confident opinion that Davis would pay the debt, and that the defendant would not be subjected to loss. The agent did not assume to discharge the defendant from his liability as guarantor, or agree to look only to Davis for payment, and the case is not brought within the decisions in *Harris* v. *Brooks* (21 Pick. 195) and *Hogaboom* v. *Herrick* (4 Vt. 131)."

But in the case at bar the allegation in the answer is specific that the representation was that the plaintiff did not and would not assert any claim against the defendant upon those corporate notes as to which the defendant's liability was in dispute. The appellant insists that there can be no estoppel because the respondent did not rely on the representation, but there is a specific allegation of reliance.

Nor is there any inconsistency between the defendant's denial in other portions of its answer of any liability on these corporate notes and its allegation in the separate defense, which is attacked, that there is an estoppel. The defendant had a right to deny liability in the first instance and at the same time assert the position that even if it was wrong in this denial there was an estoppel against the plaintiff.

For these reasons the order appealed from should be affirmed.

FINCH, J., concurs.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.