FIRST NATIONAL BANK OF FORT SCOTT, KANSAS, Appellant, v. J. W. LILLARD, Respondent.

Kansas City Court of Appeals, January 8, 1894.

1. **Banks and Banking:** TRIAL PRACTICE: INSTRUCTIONS: EVIDENCE: NEGLIGENCE. It is error to instruct a jury as to the effect of negligence of a banker in accepting a note with a forged signature when there is no evidence showing such negligence.

2. **Principal and Surety:** NEGLIGENCE OF PAYEE: DISCHARGE OF SURETY. If the payee causes the surety to forego security when he would have taken it, the surety is released, without regard to the care or negligence exercised by the payee.

3. ———: DISCHARGE OF SURETY: EVIDENCE. The act of the payee that discharges the surety must be one that causes the surety to forego an indemnity he *would* have taken, and there should be evidence that he *would* have taken such security but for the act of the payee.

*Appeal from the Vernon Circuit Court.*—HON. D. P. STRATTON, Judge.

*Burton & Wight* for appellant.

(1) Plaintiffs were not guilty of any negligence in accepting notes three and four, because the signatures

of J. W. Lillard and Willis Hughes thereon were so like their genuine signatures that it was impossible to tell the difference. Because plaintiffs were not required to go out and ascertain the genuineness of signatures. Plaintiff is entitled to recover upon the note sued on. *White v. Middleworth*, 42 Mo. App. 368; *Allbright v. Griffin*, 78 Ind. 182; *Hubbard v. Hart*, 71 Iowa, 668; *Kirby v. Landes*, 54 Iowa, 150; *Morkle v. Hatfield*, 3 Am. Dec. 446; *Bank v. Smith*, 13 Am. Dec. 37. (2) Instruction number 1 given for defendants was erroneous, because it permitted the jury to determine, as a matter of law, what acts of plaintiff were negligent; because, there being no dispute as to the facts, and there being no inference of negligence therefrom, it was the duty of the court to so declare. *Barton v. Railroad*, 52 Mo. 253; *Bell v. Railroad*, 72 Mo. 50; *Gourley v. Railroad*, 25 Mo. App. 144.

*M. T. January* and *Hoss & King* for respondents.

At this time it is apparent upon inspection that the second count of defendant's answer is faulty in this, that it combines two separate and distinct defenses, namely: *First*. Negligence of the bank in accepting the forged renewal notes. *Second*. Estoppel in *pais*— stamping the note in suit "paid" with the bank stamp, and thus furnishing the means to J. F. Lillard to deceive his sureties to their damage. However, objection was not taken on this point by plaintiff, but an issue of facts is squarely presented in the reply involving both defenses and the instruction given at defendant's request fairly presents both questions to the jury.

STATEMENT.

The following statement is sufficiently accurate, from which may be ascertained some of the main features of the case: The plaintiff is a national bank at Fort Scott,

Kansas. Jas. F. Lillard, J. W. Lillard and Willis Hughes, now deceased, were residents of Vernon county, Missouri, living some eight or ten miles from Fort Scott. In February, 1889, Jas. F. Lillard applied to plaintiff for a loan. He offered as securities J. W. Lillard and Willis Hughes. A note was made out, dated February 20, 1889, for $1,200, payable in ninety days, and delivered to Jas. F. Lillard, who returned it signed by himself, J. W. Lillard and Willis Hughes, and received the money upon it, less discount.

Prior to that Jas. F. Lillard and Willis Hughes had done business with plaintiff, and plaintiff's officers were familiar with their signatures. J. W. Lillard had not been a customer of plaintiff's, but plaintiff had frequently cashed his checks on other banks, and its officers were familiar with his signature. When that note became due, Jas. F. Lillard renewed it by giving a second note, dated May 21, 1889, for $1,250, signed by himself, J. W. Lillard and Willis Hughes, and payable in ninety days. The first note was then stamped "paid" upon its face and surrendered to Jas. F. Lillard. When the second note became due, Jas. F. Lillard renewed it by giving a third note for $1,300, dated August 19, 1889, payable in ninety days, signed by himself, and *purporting to be signed by J. W. Lillard and Willis Hughes,* and said second note was stamped "paid" upon its face and delivered to Jas. F. Lillard.

When the third note was due Jas. F. Lillard paid thereon a sum sufficient to reduce the debt to $1,100, for which he gave a fourth note, dated November 17, 1889, payable in ninety days, and also purporting to be signed by J. W. Lillard and Willis Hughes. The signatures of J. W. Lillard and Willis Hughes to the third and fourth notes were counterparts of their genuine signatures, and were accepted by plaintiff just as the genuine one preceding had been.

When the fourth note became due Jas. F. Lillard called at plaintiff's bank, left with plaintiff the amount of the discount, and took away a fifth note, which he agreed to have signed by the same securities. He never returned, but in a few days left the country, and has never been heard of since. Some time after he had gone, plaintiffs learned of his leaving and sent word to J. W. Lillard and Willis Hughes that the fourth note was due and asking them to call and pay it. In response to that notice J. W. Lillard and Roland Hughes called at plaintiff's bank and examined the fourth note, but *did not inform plaintiff that it was a forgery*.

When Jas. F. Lillard left, which was on the nineteenth of February, 1890, he was a defaulter as tax collector and J. W. Lillard and Willis Hughes were on his bond. He was also owing a note to one Hughes, of Ray county, on which note J. W. Lillard was security. Attachment suits were brought by his bondsmen, and by Hughes, of Ray county, and all of Jas. F. Lillard's property was seized and sold under the attachments, and the proceeds paid to said bondsmen and Hughes.

In April, 1891, plaintiff brought suit in Vernon county circuit court on the fourth note, and then learned that J. W. Lillard's and Willis Hughes' signatures thereon were forgeries. Thereupon on October 30, 1891, plaintiff brought this suit on the second note. Defendants admit its execution, but allege negligence on the part of plaintiff in accepting the third and fourth notes, and in not notifying defendants. There was evidence tending to show that between the time of the second genuine note (the one in suit) was due and the departure of Jas. F. Lillard he had ample property out of which the amount of such note could have been made; but that at the time of his departure he was insolvent.

ELLISON, J.—Under the theory upon which the parties tried this cause and the instructions of the court the verdict was for defendants. We have in the first instance examined the case from the standpoint of the theory upon which it was tried and have concluded that the judgment should be reversed and the cause remanded. That theory was based upon negligence in the plaintiff bank in taking the third note (the first forged note) in payment of the second genuine note and stamping the latter as paid. The whole negligence must, however, be based on the negligent acceptance of the forged note in payment of the genuine, since marking it paid is but the result of this. The court instructed the jury, at the instance of the defendants, on the hypothesis of such negligence. In order to justify such instruction there should have been some evidence tending to prove the negligence thus instructed upon. Now, from the record here there does not appear a syllable of such testimony. On the contrary the testimony on the part of plaintiff shows, without pretense of contradiction, that the signatures to the forged note were exactly like those to the genuine note and that they could not be distinguished. Nor was there any evidence upon which the idea could be based that it was negligence in plaintiff in not inquiring whether the signatures of these sureties were genuine when the genuine note was surrendered and stamped, "paid." In this respect, also, there was abundant affirmative testimony on the part of plaintiff that rebutted such proposition.

Since the case is to be retried it is proper to add the following: We have not been able to see what bearing any question of plaintiff's negligence can have on the case. If plaintiff's act in surrendering the note to the principal debtor cancelled and marked paid, caused these surety defendants to *forego* or *forbear*

securing or indemnifying themselves from the principal debtor, in consequence of which forbearance they have lost available recourse on him by reason of his insolvency, then they are discharged, regardless of any negligence on the part of plaintiff. If the plaintiff has thus caused them to forego taking security or indemnifying themselves when they otherwise would have done so, then in such case plaintiff's utmost care and prudence would be no answer to the injury done the sureties. Both parties in such case are innocent, but plaintiff is the party, notwithstanding, who caused the injury and must be the one to bear the burden of such injury.

We have had occasion to pass upon the general proposition of law as to the release of sureties under kindred conditions to those now presented. We here state what we understand it to be. When a creditor who knows that one occupies the relation of surety to the principal debtor notifies such surety that the debt is paid, or cancels the debt, the surety being apprised thereof, and in consequence of such notice or cancellation changes his situation, as by surrendering security, or refraining from taking security which he could have taken *and which he otherwise would have taken,* he is discharged. *Triplett v. Randolph,* 46 Mo. App. 569; *Driskell v. Mateer,* 31 Mo. 325; *Carpenter v. King,* 9 Met. 517. In *Triplett v. Randolph,* the act of the plaintiff caused the sureties "to forego" securing themselves. That is, *the act* of the plaintiff *caused* them not to secure themselves—was the reason why they did not. So the same may be said of *Carpenter v. King.*

In the case at bar there is evidence tending to show that defendants could have secured or indemnified themselves at the time the genuine note became due and for a period thereafter; but there is no evidence

whatever that they *would have done so, had it not been for the fact of seeing the note marked paid in the hands of their principal.* If any inference at all is to be drawn from this branch of the case as it now appears in the the record, it is that they would not have done so. They had been the sureties for this principal at other times and in other relations; and during a time, too, when one of them, at least, knew of his unsteady character and unbusinesslike habits. Conceding that if defendants had known that the note had been taken up by giving another with their names forged thereto they would have brought matters to an immediate adjustment, yet it must be remembered that they got no such information from plaintiff's act in surrendering and cancelling the note; which act is all that gives them standing in court. The real question is, could they *and would* they have secured, or, otherwise indemnified themselves, if they had not been led to believe that the note had been paid off and discharged and the matter of forgery was outside the case, except for the purpose of avoiding the cancellation of the note in suit. As before stated, the evidence tends to show they could, but does not tend to show that they would. The latter showing is the very essence of the case. It may be that, if plaintiff had not cancelled the note, these defendants would have made no inquiry or effort concerning it. We are, of course, uninformed what they would have done.

The judgment is reversed and the cause remanded. All concur.