WEST, *Public Administrator, Appellant,* v. BRISON, *Administratrix.*

1. **Judgment:** PRESUMPTION OF PAYMENT. Presumption of payment of a judgment from mere lapse of time will not arise short of a period of twenty years.

2. ———: ———. It is not essential however that such payment be positively shown, and it may be presumed from lapse of time short of twenty years in connection with other circumstances tending to show payment.

3. **Administrator:** EXTENSION OF TIME OF PAYMENT OF DEBTS. An administrator, under his general power to preserve the estate, may make a valid agreement for the extension of the time of payment of a debt due the estate.

4. **Principal and Sureties.** A judgment against the principal and sureties on a bond does not extinguish the relation of principal and sureties; their rights *inter sese* remain as before.

5. ———: EXTENSION OF TIME FOR PAYMENT OF DEBT. An agreement by the creditor with the principal debtor giving an extension of time for the payment of the debt, in order to discharge a surety, must be made for a valuable consideration, and the extension must be for a definite period.

6. ———: DISCHARGE OF SURETY. Where, however, the creditor gives the surety to understand that he will look to the principal debtor alone for payment, and the surety is lulled into security to his loss, he will be discharged from liability.

*Appeal from Cass Circuit Court.* — HON. D. A. DEARMOND, Judge.

AFFIRMED.

*Wooldridge & Daniel* for appellant.

(1) The court erred in refusing instruction number 4, asked by the plaintiff. The powers of an administrator are derived from the statute, and he holds the personalty of the estate *in auter droit*, and as trustee. It is his duty to collect the debts due the estate, and discharge its liabilities. The power to make a voluntary release of a debt or of a surety is inconsistent with his statutory duty to collect the debts due the estate, pay the demands allowed against the estate, and distribute residue among 'those entitled to it. R. S., sec. 94; Schouler's Ex'rs and Adm'rs, sec. 242; *Lessing v. Vertrees*, 32 Mo. 431; *Mossman v. Bender*, 80 Mo. 584; *Chandler v. Stevenson*, 68 Mo. 450. (2) .He cannot even compound with an insolvent debtor and give him a discharge on receiving a fair proportion of the debt, without the approbation of the judge of probate. Much less can he voluntarily release a debtor. R. S., sec. 242. (3) There was no release under seal, or in writing, of any surety in the judgment, and no consideration whatever for such release; and a mere parol release of a surety, if any such were made, had nothing on which to rest, and did not discharge him. *Goodman v. Griffin*, 3 Stew. (Ala.) 160; *Miller v. Knight*, 6 Baxt. (Tenn.) 503. (4) A levy of execution on real estate is not a satisfaction or release of the judgment. Freeman on Judgments [1 Ed.] sec. 474; *Taylor v. Ranney*, 4 Hill, 619; *Reynold v. Rogers*, 5 Ohio, 169, 173–4, and cases cited; *United States v. Dasheil*, 3 Wall. 688 [18 L. Ed. 268]; Freeman on Executions, sec. 282. (5) The court erred in the instruction given of its own motion. The real estate owned by the principals, included in the supposed levy, was either sold and the proceeds applied on this judgment, or it was embraced and included, together with a large amount of land of said principals and of other parties not in said levy, in the deed of trust given by the principals and others to secure the judgment. Before the lien of the judgment

expired the deed of trust was executed. The defendant's intestate was not injured, but rather benefited thereby. Brandt on Sur. & Guar., sec. 380, and cases cited. (6) The taking of the deed of trust by the administrator, as it did not extend the time of payment, did not release the sureties. Brandt on Suretyship, sec. 320; *Ins. Co. v. Carson*, 31 Mo. 218; *Morgan v. Martien*, 32 Mo. 433; *Noll v. Oberhellman*, 20 Mo. App. 336; *United States v. Hodge*, 6 Howard [12 L. Ed.] 279, 437. (7) A parol agreement for extension of time of payment, not founded on a good consideration, and not extending time of payment of the debt for a definite time, is not binding and does not release the surety. *Ins. Co. v. Carson, supra; Headlee v. Jones*, 43 Mo. 235; *Rucker v. Robinson*, 38 Mo. 154; *Hosea v. Rowley*, 57 Mo. 357; *Michael Boring's Appeal*, 9 Cent. Rep. [Pa.] 394; *United States v. Hodge, supra;* 20 Cent. Law Journal, 183. (8) Mere delay or promise of delay for an indefinite period of time, or agreement to look only to principals for payment, or parol promise, if any, to release sureties without consideration therefor, will not discharge sureties from liability. 1 Story Eq. Jur. [9 Ed.] sec. 326, chap. 7, p. 315; 29 Cent. Law Jour., *supra.*

*W. J. Terrell* and *Railey & Burney* for respondent.

(1) The judgment sued upon had been fully paid by the principals therein, and no cause of action existed against defendant. (2) By releasing property, sufficient in value to pay the debt, which had been levied upon by the sheriff under execution, and ordering return thereof unsatisfied, the administrator released and discharged the securities. *Semple v. Atkinson*, 64 Mo. 504; *Lower v. Bank*, 78 Mo. 67; *Priest v. Watson*, 75 Mo. 310; *Bank v. Matson*, 24 Mo. 333; *Stillwell v. Aaron*, 69 Mo. 539. (3) The extension of time of payment to the principals in said judgment, without the knowledge

West v. Brison.

and consent of the securities, had the effect of discharging the latter. *Williams v. Jenson*, 75 Mo. 681; *Ins. Co. v. Hauck*, 83 Mo. 21; *Ins. Co. v. Hauck*, 71 Mo. 465; *Stillwell v. Aaron*, 69 Mo. 539. (4) The execution of the deed of trust, whereby property not subject to execution was made liable to the payment of the debt, is a good consideration for the extension of time, and such agreement will discharge the securities. *Semple v. Atkinson*, 64 Mo. 504; *Bank v. Leavitt*, 65 Mo. 562; *Chambers v. Cochran*, 18 Ia. 162. (5) The administrator had power, in the conduct of the business of the estate, to perform such acts as would discharge the securities. *Semple v. Atkinson*, 64 Mo. 504; Herman on Estoppel and Res Adjudicata, sec. 1125; American and Eng. Cyclopedia of Law (bottom p.) 284; *Wood v. Tunnicliff*, 74 N. Y. 40; *North v. Walker*, 2 Mo. App. 174; *Smarr v. McMaster*, 38 Mo. 349; *North v. Walker*, 66 Mo. 453; *Wilkes v. Black*, 4 S. W. Rep. 767; *Ward v. Brown*, 87 Mo. 468; *Bliss v. Pritchard*, 67 Mo. 181. (6) The instruction of the court numbered one properly declares the law. *Dodd v. Winn*, 27 Mo. 501; *Rice v. Morton*, 19 Mo. 263. (7) The relation of principal and surety is not changed by placing the debt in judgment. Freeman on Judg. 226; *Dodd v. Winn*, 27 Mo. 501; *Rice v. Morton*, 19 Mo. 263; *Chambers v. Cochran*, 18 Ia. 162. (8) The administrator declared to defendants intestate, in his lifetime, that he was released from liability, and this declaration, with the other circumstances, amounts to a discharge. Brandt on Suretyship, sec. 211; *Harris v. Brooks*, 21 Pick. 195; *Thornburg v. Madren*, 33 Ia. 380. (9) This court will not interfere with the verdict of a jury if there is any substantial evidence to enable the jury to find such verdict. *Baker v. Stonebraker*, 36 Mo. 338; *Price v. Evans*, 49 Mo. 396; *Spohn v. Railroad*, 87 Mo. 84; *State v. Preston*, 77 Mo. 294.

BLACK, J.—On May 7, 1872, letters of administration were issued upon the estate of James R. Cline to

his widow, Nettie Cline, and her father, James Blair, Jr.; and they gave bond in the sum of thirty-five thousand dollars for the performance of their duties, with James Blair, Sr., William T. Brison, J. C. and A. H. Boggs and G. W. Feely as sureties. The letters of administration were revoked in May, 1873, and the estate ordered into the hands of Newton P. Brooks, public administrator of Cass county. On September 6, 1873, Brooks, as such administrator, recovered a judgment against the former administrator and administratrix, and the sureties on their bond, in the sum of $10,611.40. Brooks died in 1879, and Cummings was appointed administrator of the Cline estate, but he died before he entered upon the discharge of his duties, and in February, 1880, the Cline estate was ordered into the hands of the present plaintiff, public administrator.

William T. Brison, one of the sureties of Cline and Blair, Jr., died in 1885, and Lucy H. Brison is the administratrix of his estate. In the year, last mentioned, the plaintiff presented the judgment, before mentioned, for allowance against the Brison estate, and the probate court allowed the demand in the sum of thirty-five hundred and seventeen dollars, and the defendant appealed. A trial anew in the circuit court resulted in a judgment for defendant and the plaintiff appealed to this court.

The defenses set up to the demand are, first, payment; and, second, that Brison, as a surety on the bond, was released and discharged from all liability by Brooks, the former administrator *de bonis non*.

The further facts disclosed by the evidence are in substance as follows : An execution was issued upon the judgment against Cline and Blair, Jr., and their sureties on September 9, 1873, and levied upon real estate of the principals and sureties of a value more than sufficient to pay the judgment. This execution was returned not satisfied and without a sale on the

twenty-third of January, 1874, by order of Brooks, the plaintiff therein.   On the sixth day of September, 1876, one day before the judgment lien expired,. Nettie Cline and Blair, Jr., being joined by the widow of James Blair, Sr., executed to Brooks, administrator *de bonis non* of the Cline estate, a deed of trust to secure the balance then due upon the judgment.   This deed of trust included the property of the principal debtors, which had been levied upon, except one parcel which had been sold and the proceeds applied on the judgment, and also property belonging to them not covered by the lien of the judgment.   There was also included therein the property known as the Blair hotel in Harrisonville, which belonged to James Blair, Sr.   A recital in the deed of trust states that $7,752.40 had been paid on the judgment.   The annual settlement of Brooks as administrator, made in April, 1878, more than a year and a half after the date of the deed of trust, shows a payment to him by Blair, Jr., in allowed demands procured and turned over to Brooks in the sum of $3,486.59. Defendant insists that this payment was additional to that recited in the deed of trust, and plaintiff contends that it was a part thereof.   The settlement of Brooks filed in 1879 shows a further payment of $1,562.45.   In 1882, and after the death of Brooks, the present plaintiff caused the property in the deed of trust to be sold, the sale producing only the sum of $2,384.

The evidence shows that Blair, Jr., acting for himself and Mrs. Cline, had frequent interviews with Brooks from and after the levy of the execution in 1873, with a view of saving the sureties; and the evidence tends to show that Brooks agreed to give these principal debtors time to pay off the debts of the Cline estate, and to take the receipts of Mrs. Cline for herself and as guardian of her child for any balance, provided the probate court would accept these receipts in the final settlement to be made by Brooks.   Pursuant to this

arrangement Mrs. Cline and Blair, Jr., made the payments mentioned in the deed of trust, amounting to $7,752.40, and then executed the deed of trust to secure the balance due on the judgment; but Mrs. Cline did not produce the receipts.

There is other evidence to the effect that Crooks as administrator *de bonis non*, on various occasions, extending over a period of three or four years from 1873 or 1874, stated that Mrs. Cline and Blair, Jr., had made arrangements to pay off the debts of the Cline estate and were to have time to do so, and that the sureties were released and he had notified them that they had been released. This evidence of Brooks' declarations finds support in the undisputed fact that the sureties were never called upon to pay any part of the judgment from 1874 to 1885, and in the further fact that Brooks paid Brison an allowed demand of $181.60, and the present plaintiff paid to him as late as 1882 allowed demands amounting to $1,191. In the meantime the principal debtors became non-residents and they and all the sureties, except Brison, became insolvent.

1. For the plaintiff the court instructed the jury that no presumption of payment of a judgment would arise from lapse of time, short of twenty years. The defendant then asked and the court gave an instruction to the effect that it was not necessary that payment should be positively shown, but it might be presumed from lapse of time, short of twenty years, with other circumstances, if any, tending to show payment, and if they believed from all the evidence that the judgment had been paid they should find for the defendant.

The evidence does not tend to show that Brooks took the deed of trust in payment of the balance due upon the judgment, for it only professes to be additional security. The only substantial issue of fact over the payments was whether the $3,486.59 was included

in the payments recited in the deed of trust; and as to this the instructions might have been more specific. But the plaintiff asked and had given the general instruction as to presumption from lapse of time short of twenty years, and there was no error in modifying it by the one given at the request of the defendant. Most of the parties to these transactions were dead, and ten or more years intervened between the date of the alleged payments and the trial, and the time which had elapsed, though short of twenty years, was an element which might be considered in connection with the other circumstances.

2. The court, on the request of plaintiff, refused to instruct the jury that although Brooks, as administrator *de bonis non* of the Cline estate, did agree to release the sureties on the bond of Mrs. Cline and Blair, Jr., still he had no power or authority to make such release, and the sureties were not thereby discharged; but of its own motion directed the jury that if the execution was returned not satisfied by order of Brooks in 1874, pursuant to an agreement with the principal debtors to the effect that he would extend the time of payment of the judgment, release the sureties and look to them alone for payment; that Brison was informed of the agreement and was told by Brooks that he was discharged; that Brison acted upon that assurance to his death in 1885; that the property of the principal debtors levied upon was sufficient to satisfy the judgment; and that they became insolvent and non-residents in 1881, then the finding should be for defendant.

There is no doubt but the administrator holds the property of the estate for the sole purpose of administration, and his duties are for the most part defined by statute, and there is no statute which, in terms, allows him to discharge a surety on a debt due the estate. But he is charged with the collection and preservation of the assets, and there are many things which he may

do, because included in his general powers, though not specifically designated by the statute. In the case of *Smarr v. McMaster*, 35 Mo. 349, Smarr presented a note for allowance against the estate of McMaster, and the defense was that the holder of the note had given the principal debtor time for the payment thereof after the death of McMaster, who was a surety, only, on the note. The plaintiff offered to show that the time of payment had been extended with the consent of the administrator of McMaster, but the trial court excluded the evidence. This court held that the evidence should have been received, saying, in effect, we are of opinion that, under the general authority of the administrator to preserve the estate, the power of consenting to an extension of time might be exercised. That ruling was approved in *North v. Walker*, 66 Mo. 454, where it was held that an executor had the power to make a valid agreement for the extension of the time of payment of a debt held by another against the estate which he represented.

It is certainly within the power of an administrator to take additional security, and, in doing this, it will often become necessary to give further time to the principal debtor. The fact, that such a power may, in some instances, be exercised to the detriment of the estate, is no reason why it should be denied in all cases. The administrator, by extending the time of payment to the principal debtor, without the consent of the sureties, may make himself and his own sureties liable. The cases cited are quite to the point, and justify the conclusion that the administrator Brooks had the power to give the principal debtors an extension of time in which to pay the judgment.

The judgment against the principals and sureties on the bond did not extinguish the relation of principal and surety; and the rights of the sureties, as such, remained the same as before judgment. *Rice v. Morton*,

19 Mo. 263; *Dodd v. Winn*, 27 Mo. 501. Again, where the surety claims to have been discharged by reason of an agreement between the creditor and principal debtor, extending the time of payment, it must appear that the agreement was upon a valuable consideration, and that the extension was for a definite period of time. In this case the evidence does not show, nor were the jury required to find, that the time of payment of the judgment had been extended for a defined period. Brooks appears to have been at liberty to pursue his remedy whenever he saw fit to do so. There are, however, other principles of law applicable to this case. If the creditor gives the surety to understand that he will look to the principal debtor, alone, for payment, and the surety is thereby lulled into security to his loss, the creditor should suffer the consequences. Thus it was held in *Harris v. Brooks*, 21 Pick. 195, that a parol declaration of the holder of a note to the surety, that he would exonerate him and look to the principal only, and the surety by reason thereof omitted to take up the note and secure himself, constituted a good defense for the surety. Though a promise to look to the principal debtor alone for payment, standing by itself, would be a *nudum pactum*; still as has been said "where, however, the surety is induced by such an assurance to surrender the securities which he has received from the principal, or to forego any means of indemnity or protection, an estoppel will arise to the extent of the resulting loss. 2 Am. Lead. Cas. [5 Ed.] 481. Here Brison, the surety, was lulled into security by the assurance of Brooks, for a period extending from 1874 or 1876 to 1885, and in the meantime the principal debtors and all of the other sureties became insolvent. The principal debtors had furnished security by the deed of trust, executed in 1876, sufficient to satisfy the balance due upon the judgment; but this security became depreciated by the *laches* of Brooks. It would be nothing

short of giving effect to a fraud to require the Brison estate to pay any part of the judgment under these circumstances.

It can make no difference in the result that Nettie Cline has thus far failed to furnish receipts for any money that may be coming to her and her child, after the payment of the debts of the estate. Brison had nothing to do with that arrangement and his release does not depend upon its performance.

The plaintiff makes the further point that there is no evidence tending to show that the property of the principals, Nettie Cline and Blair, Jr., levied upon was sufficient to satisfy the judgment, and this point seems to be well taken. While the property of the principals and sureties levied upon was sufficient in value to have paid the judgment of ten thousand dollars and over, that of the principals did not exceed in value thirty-five hundred dollars. This error, however, should not reverse the judgment. The other facts stated in the instruction are well supported by the evidence, and are of themselves sufficient to support the judgment. The release of Brison stands upon the ground that he had been assured by Brooks that he was discharged, and upon that assurance he rested and relied for a period of ten or more years, and in the meantime the principals and other sureties became insolvent. These facts are so clearly disclosed by the evidence that the judgment should not be disturbed for the error before mentioned. The judgment is therefore affirmed. All concur.