BANK OF NEELYVILLE, a Corporation, Appellant, v. ALBERT LEE, CHARLES SMITH, G. C. STOUT and W. L. BIGGS, Respondents.

Springfield Court of Appeals, July 10, 1914.

1. NEGOTIABLE INSTRUMENTS: Provisions for Attorney's Fee: Validity. A contract for an attorney's fee for collection in a note is valid and may be enforced. Prior to the present Negotiable Instrument Law such a provision rendered the note non-negotiable (citing Section 9973, R. S. 1909).

2. INSTRUCTIONS: Bills and Notes: Actions Against Sureties: Assumptions. Action against sureties on a note. Defended on the ground that the sureties were led to believe by plaintiff that they would not be proceeded against until after the principal became insolvent. Instructions examined. *Held*, that they contained no such assumption of the principal's insolvency as required a reversal.

3. APPELLATE PRACTICE: Instructions: Complaint: Requests not Made at the Trial. Action against sureties on a note. Defended on the ground that plaintiff led them to believe until after the principal became insolvent that they would not be expected to pay the note. It is not ground for complaint that the instructions failed to define the term "insolvency" where the complaining party requested no instruction defining that term.

4. PRINCIPAL AND SURETY: Creditor's Conduct and Statements: Discharge Surety When. Where a creditor gives a surety to understand that he will look to the principal debtor alone for payment and the surety is thereby lulled into security to his loss, the creditor should suffer the consequences.

5. NEGOTIABLE INSTRUMENT: Discharge of: Statutes. Negotiable instruments may be discharged how. See Section 10089, R. S. 1909.

6. **PRINCIPAL AND SURETY: Surety Discharged How: Estoppel: Essential Elements.** The mere promise by a creditor to look to the principal debtor on a note for payment is not alone sufficient to discharge the surety. The holder of the note must also do something which induces the surety to surrender securities which he has received or to forego means of indemnity or protection before an estoppel will arise.

7. **———: ———: Where Estoppel Does Not Apply.** Representations by a creditor that he had taken security for the debt are not sufficient to discharge a surety on a note, where the surety really knew that such security did not cover the note upon which he was the security.

8. **ESTOPPEL: Elements of Estoppel by Conduct.** To constitute an estoppel by conduct there must be a false representation to or concealment of material facts from a party ignorant of the truth by one who has knowledge of the facts with the intention that the party ignorant of the truth shall act upon such misrepresentations, and such party must have been induced to act thereon.

9. **PRINCIPAL AND SURETY: Surety Discharged How: Estoppel Does Not Apply When.** Where a surety on a note knew nothing of representations made by the creditor to his co-sureties to the effect that such creditor had taken security for the debt and the co-sureties were thereby induced to neglect to take security, such surety who was ignorant of these representations could not have been misled thereby.

Appeal from Butler Circuit Court.—*Hon. J. P. Foard,* Judge.

REVERSED AND REMANDED (*with directions*).

*David W. Hill* for appellant.

(1) Stout, expressly, and Biggs, inferentially, testify that they knew the first mortgage was given to the bank to secure the $525 note only, and Stout says he knew that it was not given to secure the $700 note in suit, therefore, they could not have been misled by any statement by the bank's officers. 1 Bigelow on Estoppel 438; Acton v. Dooley, 74 Mo. l. c. 67; Bales v. Perry et al., 51 Mo. l. c. 452, 453, 454; Hequembourg v. Edwards, 155 Mo. l. c. 522-523; Lange v. N. Y. Life

Ins. Co., 162 S. W. l. c. 595; Blodgett v. Perry, 97 Mo. l. c. 272-273; Spurlock v. Sproule, 72 Mo. l. c. 508-509-510. (2) In the note, it is expressly agreed as follows: "The makers, . . . of this note hereby severally waive demand, presentment for payment, notive of non-payment, protest, notice of protest and diligence in bringing suit against any party hereto, and consent that the time of payment may be extended without notice thereof." That portion of the contract is valid and binding, but they complain in their answer of lack of diligence in bringing suit. To escape that portion of the contract, it would be necessary that a valid consideration should exist in any agreement, whereby the terms of the note would be changed. Cummings v. Lumber Co., 130 Mo. App. l. c. 563; Harburg v. Kumpf, 151 Mo. 16. (3) The statute points out the only ways by which a note may be discharged. Secs. 10089, 11269 and 11270, R. S. 1909.

*Abington & Phillips* for respondents.

(1) Appellant by its statements and promises prevented respondents from taking security from Lee when he was solvent and willing to give them security against loss, and Lee now being insolvent, appellant is estopped from collecting the notes from respondents. West v. Brison, 99 Mo. 684, l. c. 693; Triplet v. Randolph, 46 Mo. App. 569, l. c. 572-3; 32 Cyc. 214; Driskell v. Mateer, 31 Mo. 325; Smith v. McCall, 63 Mo. App. 634. (2) The bank dissipating the security in the way it did, released the sureties. 32 Cyc. 216.

ROBERTSON, P. J.—Plaintiff brought this action against the defendants to recover on a negotiable promissory note, executed to it November 25, 1910, for the sum of $700.00, due four months after its date, providing for interest from maturity at the rate of eight per cent. per annum payable annually and if not so

paid to bear the same rate of interest as the principal, upon which note the interest was paid to November 1, 1912. The defendants, Smith, Stout and Biggs signed as sureties for the defendant Lee. The note contained the following agreement: "The makers, sureties, endorsers and guarantors of this note hereby severally waive demand, presentment for payment, notice of non-payment, protest, notice of protest and diligence in bringing suit against any party hereto, and consent that the time of payment may be extended without notice thereof; and further agree that, in case payment of this note shall not be made at maturity and the same is placed in the hands of an attorney for collection, they will pay the costs of collecting this note, including an attorney's fee of ten per cent. of the principal and interest thereof remaining unpaid."

Defendants Smith, Stout and Biggs filed their answer which, so far as is necessary to notice in this decision, admits the execution of the note but alleges that they made and executed the same as sureties for the defendant, Lee; that they believed the note had been paid by defendant Lee at maturity but thereafter learned, in January, 1912, that it was yet unpaid; that immediately, while the said Lee was solvent, they were proceeding to take such steps as might be necessary to protect themselves from loss as sureties of said Lee, communicating such intention to the plaintiff, which informed them that it had in its possession securities sufficient to cover all of the defendants' indebtedness to it, including the note in suit, and stated, promised and agreed that it would look to such securities and not to the defendants for the payment of the note sued on if it was not paid by defendant Lee; that the defendants, relying upon such statements, agreements and promises of the plaintiff and being deceived thereby, refrained from proceeding to secure themselves from loss as sureties; that the plaintiff, without the knowledge or consent of the defendants carelessly, negli-

gently and wrongfully allowed and permitted the defendant Lee to dispose of, by sale or otherwise, the security it had to insure the payment of all of said indebtedness, including this note; that shortly after said statements, promises and agreements were made by the plaintiff as aforesaid the defendant Lee without the knowledge of the defendants Smith, Stout and Biggs, became and still was at the date of the filing of said answer absolutely insolvent, and that but for the said statements, agreements and promises of the plaintiff while said Lee was solvent these defendants could have and would have proceeded to secure themselves against loss as sureties of said Lee, but that by reason of the said action of the plaintiff they were, until it was too late to protect themselves as sureties on said note and until said Lee had become hopelessly insolvent, lulled into a belief that they would not be proceeded against by the plaintiff as sureties on said note. The plaintiff replied to this answer by a general denial.

Without objection from either party a jury was empaneled and a trial had which resulted in a verdict for the plaintiff against the defendant Lee and in favor of all of the other defendants, from which the plaintiff has appealed.

The testimony is very contradictory but for the purpose of the points to be decided we must consider the testimony most favorable to the three appealing defendants, from which testimony it appears that on January 25, 1912, the plaintiff took a chattel mortgage from the defendant Lee on thirty-eight head of horses, mules and cattle of the value of about four thousand dollars, to secure a note to the bank for the sum of $525.00, and after taking this mortgage the officers of the bank assured the defendants, Biggs and Stout, that it had taken security for the note involved herein and these defendants need pay no further attention to this note as they would not have to pay it since the bank was

amply secured. The defendant Biggs testified that he knew nothing about the details of the mortgage and as a result of various conversations with the officers of the plaintiff bank he was led to believe and was assured that the note involved here was the one that was secured by the mortgage to which reference has been made above. The testimony also tends to prove that at that time he could have procured from defendant Lee a first mortgage on some property to secure himself, Stout and Smith, had not he, Biggs, been thus misled by the plaintiff and that he did not become advised that the plaintiff as a matter of fact did not have a mortgage securing this note until after the defendant Lee had become insolvent and all of the property described in the chattel mortgage either lost or sold and a portion of the proceeds from the sales received by the plaintiff.

Defendant Stout testified that he and his co-sureties on this particular note discussed the question of getting a mortgage from the defendant Lee on his property and that after he had been advised that Lee was willing to execute a mortgage he and Biggs saw the cashier of the plaintiff bank at its place of business, who informed them that he (the cashier) had gone and looked over defendant Lee's property and that he had taken a mortgage on everything Lee had, or everything he had seen there; that the witness then asked the cashier why he had taken the mortgage on everything Lee had and the cashier replied that he had taken it for the purpose of securing the sureties and that the mortgage was sufficient to secure everything that Lee owed the bank. However, the defendant Stout further testified that after Biggs left, the cashier of the plaintiff bank told him (Stout) that "this mortgage he had only covered $525 of the indebtedness for the other notes I was on. He told me the mortgage he had was for $525. I knew that it did not cover the $700. I and Mr. Biggs went on an-

other hundred dollar note with Lee at the bank. He said he had security sufficient to protect us sureties and he would guarantee that we would not lose anything.''

At the close of the testimony the court instructed the jury that they must find the issues against the defendant Lee in the sum of $700, with interest at the rate of eight per cent. per annum from November 1, 1912, until the date of the trial, October 23, 1913, regardless of what the verdict should be as to the other defendants. The verdict as to defendant Lee was accordingly returned and judgment entered. The plaintiff complains of this instruction because it failed to allow attorney's fees as provided for in the note. This contention of the plaintiff must be upheld as a contract for an attorney's fee in a note is valid and may be enforced. The only effect of such a provision in a note prior to our present negotiable instrument law (Section 9973, Revised Statutes 1909) was to render the note non-negotiable. [Bank v. Martin, 129 Mo. App. 484, 488, 107 S. W. 1108.]

The only other objection made to the instructions is as to instruction number three given in behalf of the defendants. It is said that it assumes the insolvency of defendant Lee. Owing to its length we deem it unnecessary to quote this instruction in full, but it covers the entire case upon the theory contained in the answer. Before this particular place is reached in the instruction, the jury were required to decide on the question of the insolvency of the defendant Lee and the instruction thereafter stated that if the jury believed that the defendants ''were lulled into a belief that they would not be proceeded against by the plaintiff as his sureties on said note until said Lee became insolvent,'' etc., and we hold that this, taken in connection with the previous requirements of the jury is not such an assumption of a fact as to justify a reversal, especially so in view of the fact that all of

the testimony, even in behalf of the plaintiff, tended strongly to establish defendant Lee's insolvency at some time at least between the date when the mortgage was taken by the plaintiff and when this suit was brought, and this latter clause, even though it may be said that it assumes that Lee was insolvent, requires the jury to fix the time of such insolvency for the purpose of the defense relied upon by these defendants.

The plaintiff further complains of instruction number three because the term "insolvency" was not defined. Since the plaintiff did not request an instruction for that purpose he cannot now be heard to complain. [Quirk v. Elevator Co., 126 Mo. 279, 293, 28 S. W. 1080; Kirby v. Lower, 139 Mo. App. 677, 680, 124 S. W. 34.]

The case was tried upon the theory, as between the payee and the defendants (Smith, Stout and Biggs), that they should be treated as sureties, although the Negotiable Instrument Law (Section 10161, R. S. 1900) appears to make them primarily liable. Section 10089 designates the manner in which a negotiable instrument may be discharged. [Lane v. Hyder, 163 Mo. App. 688, 147 S. W. 514.] Whether, in view of said actions, an equitable estoppel can be entertained, and if so whether at law or in equity we have not considered and do not decide, but mention it to direct attention to the fact that no such questions are now involved. The plaintiff having treated the said defendants as secondarily liable and the trial so proceeded, we shall apply the law in this State as announced by the last ruling of the Supreme Court to which we have been cited (West v. Brison, 99 Mo. 684, 693, 13 S. W. 95), holding that "if the creditor gives the surety to understand that he will look to the principal debtor, alone, for payment, and the surety is thereby lulled into security to his loss, the creditor should suffer the consequences." [See also, Driskell v. Mateer, 31 Mo. 325; Triplet v. Randolph, 46 Mo.

App. 569, 572; and Smith v. McCall, 63 Mo. App. 631, 634.]

The plaintiff undertakes to distinguish the case at bar from the *West case* on the ground that in that case it was disclosed that the creditor promised the surety that he would look to the principal for the payment of the debt and not to the surety, and in the case at bar it is claimed that the plaintiff agreed that it would look to certain securities and not to the sureties for the payment of the note, and that the defendants knew that no such securities existed. This contention cannot be sustained. The testimony discloses that defendant Lee, at the time defendant Biggs was induced to cease all efforts to protect himself, had ample property to secure all of his indebtedness to the plaintiff and that defendant Biggs was assured that the plaintiff had secured the indebtedness by a mortgage thereon. According to his testimony, he was advised that satisfactory security had been obtained by the plaintiff and that he was, therefore, released by it from any further liability on the note. The testimony is ample that but for these assurances, which the jury found were given him, he could have protected himself by securing a mortgage. Under these facts and the verdict of the jury, we cannot hold otherwise than as was held in the *West case, supra,* that the defendants who relied upon these assurances are discharged, and, upon the theory on which the case was tried and under the facts found by the jury, as a matter of justice, they should not be required to respond upon the note.

As to the liability of the defendants Smith and Stout, we have an entirely different proposition from that involved as to their co-surety. The mere promise to look to the principal debtor for payment is not sufficient of itself but must be accompanied by some act of the holder of the note which induces the surety to surrender securities which he has received or to forego

means of indemnity or protection before an estoppel will arise. [West v. Brison, *supra*.] The testimony in the case at bar discloses, as above stated, that defendant Stout knew the facts about the mortgage, that it was to secure a note for $525 and that it did not cover the note involved in this case. Therefore, he could not have been lulled into security to his loss, because he knew the $700 note was not secured by the mortgage and that plaintiff had not undertaken to obtain and had not obtained any security which would protect the defendants.

To constitute an estoppel by conduct it has been announced that the following elements must be actually or presumably present: "1. There must have been a false representation or a concealment of *material* facts. 2. The representation must have been made with *knowledge* of the facts. 3. The party to whom it was made must have been *ignorant* of the truth of the matter. 4. It must have been made with the *intention* that the other party should act upon it. 5. The other party must have been *induced to act* upon it." [Blodgett v. Perry, 97 Mo. 263, 273, 10 S. W. 891; Freeland v. Williamson, 220 Mo. 217, 231, 119 S. W. 560.] Defendant Stout was not "*ignorant* of the truth of the matter" and is, therefore, not released.

Defendant Smith made no defense that brings him within the rule announced in the last above cited cases. He testified in the case but there is no testimony that we can find which shows that he ever knew of the negotiations that his co-sureties were having with the officers of the plaintiff bank. One of the defendants stated that the security they were contemplating, at the time plaintiff took its mortgage, was for the benefit of all of the sureties, but there is no showing that Smith knew this. Defendant Stout testified that he had not seen Smith during the time he (Stout) and Biggs were talking with the officers of the plaintiff bank. It is suggested in Smith's behalf that since his co-sureties

were seeking to obtain security for him and by reason of plaintiff's conduct they were caused to digress from that course that he should thereby be released; but, as before remarked, there is nothing to show that these men were acting at his instigation or that he was misled by anything plaintiff did. If the methods of reasoning thus suggested by the respondent were adopted and applied, not only Smith but Biggs, as well as Stout, would have to be held liable on the record before us, because Stout was advised of facts that prevented him from being misled, and, extending the reason for the suggestion, his knowledge and conduct should be applied to all of his co-sureties.

From what has been said it follows that the judgment in this case as to defendant Biggs is proper, and erroneous as to defendants Smith, Stout and Lee; but as there can be but one judgment in the case (Section 2097, Revised Statutes 1909) we must reverse the one that is entered and remand the cause to be proceeded with as to defendants Smith and Stout, with directions to the trial court that when final judgment as to them is entered to also include therein the judgment in favor of defendant Biggs and against defendant Lee for the full amount due on the note and attorney's fee. [Scott v. Realty Co., 241 Mo. 112, 122, 145 S. W. 48.]

In view of further proceedings in this case we call attention to Dodd v. Winn, 27 Mo. 501, and State ex rel. v. Matson, 44 Mo. 305, 309, on the question of the amount a payee of a note may recover from sureties when there has been a release of one or more.

Reversed and Remanded. *Farrington* and *Sturgis, JJ.,* concur.