BANK OF NEELYVILLE, a Corporation, Respondent, v. ALBERT LEE, S. E. FISHER, and W. R. BUSTER, Appellants.

**Springfield Court of Appeals, March 9, 1916.**

1. **ESTOPPEL: Equitable Estoppel: Definition.** Equitable estoppel or estoppel *in pais*, is that condition in which justice forbids that one speak the truth in his own behalf.

2. ——: ——: **Foundation of Doctrine.** The doctrine of equitable estoppel rests upon the principle that where one of two innocent persons, each guiltless of intentional or moral wrong, must suffer a loss it must be borne by the one of them who by his conduct, acts or omissions has rendered the injury possible.

3. **BILLS AND NOTES: Principal and Surety: Action Against Surety: Equitable Estoppel as a Defense.** Action on a promissorry note, plaintiff being the holder and defendants sureties, though signing as makers. Plaintiff bank assured defendant sureties that it had in its possession sufficient funds of the principal debtor to satisfy all claims and extended the note without the consent of the sureties. Defendants by such assurances were prevented from paying the note and seeking redress against the principal debtor, who at that time was solvent. Such principal debtor, later having become insolvent, plaintiff was estopped from asserting defendant's liability.

4. **ESTOPPEL: Equitable Estoppel: Applicable in Courts of Law.** Although the doctrine of equitable estoppel is preeminently the creature of equity, yet it has been incorporated into the law and is applied as well in courts of law as of equity.

5. **ACTIONS: Defenses: Equitable in Legal Actions.** Since courts of law recognize estoppel *in pais,* such defense does not convert an action at law, on a note into one in equity.

Appeal from Butler County Circuit Court.—*Hon. J. P. Foard,* Judge.

REVERSED AND REMANDED.

*David W. Hill* for respondent.

*Abington & Phillips* for appellants.

ROBERTSON, P. J.—A companion case to this was here and the opinion therein is reported in 182 Mo. App. 185, 168 S. W. 796. What we there sug-

gested (p. 192) might have been involved, but was not, and that which we expressly stated we did not decide evidently lead to a belief in behalf of plaintiff that if that question were involved it should be decided in its favor. We referred in that opinion to the question as to whether if a note signed by more than one as maker, yet as a matter of fact some or one of the parties signed as surety, under the Negotiable Instrument Law (sections 10161 and 10089, Revised Statutes 1909) this latter fact constitutes a defense. Since then we have had that question before us (Long v. Shafer, 185 Mo. App. 641, 171 S. W. 690) which, by a divided court, was decided adversely to the contention now made by the plaintiff in the case at bar.

As we learn the facts in the case now before us we will see that there is little difference between it and the companion case, except now we must decide if the trial shall proceed according to the principles of law or be governed by the procedure applicable to courts of equity.

This action is on a note for the principal sum of $400 dated December 16, 1910, payable to the order of plaintiff ninety days after its date and signed by all of the defendants. The defendants other than Lee filed an answer, after which plaintiff filed a motion for judgment because of the alleged reason that it did not state facts sufficient to constitute any defense to the note. The motion was sustained, judgment entered against these appealing defendants. Lee is not mentioned in the judgment.

The answer is as follows:

"Now come the above defendants S. E. Fisher and W. R. Buster, and for their answer to the petition filed herein say that they deny each and every allegation in said petition contained, except what is hereinafter specifically admitted, averred or denied.

"Defendants admit that on the day charged in plaintiff's petition they made and executed, as sure-

ties for their co-defendant Albert Lee, and delivered
to the plaintiff bank the note filed with plaintiff's
petition and marked 'Exhibit A.'

"Defendants, further answering, state that they
had good reason to believe and did believe that upon
the maturity of said note, to-wit, on March 16, 1911,
that the same was paid off and discharged by the
principal on said note, Albert Lee; defendants fur-
ther state that upon the contrary, said note was not
paid on maturity, but was permitted by the plaintiff
bank, its agents and officers, to be automatically re-
newed; defendants further state that knowledge of
the fact that said note still remained in the hands of
the plaintiff bank, unpaid by its principal, Albert Lee,
did not come to their possession until during the
month of January, 1912; that immediately upon ac-
quiring such information, and while the said Albert
Lee was solvent, being seized and possessed of real
and personal property, aggregating in value many
thousands of dollars above his exemptions and liabil-
ities, defendants were proceeding to take such steps
as might be necessary to protect themselves from loss
as sureties of the said Albert Lee on said note as
aforesaid, and communicated such intention to the
officers, agents and employees of the plaintiff bank,
who thereupon informed these defendants that the
plaintiff bank had in its possession securities sufficient
to cover all of Albert Lee's indebtedness to the bank,
including the note sued on herein, and stated, prom-
ised and agreed that the bank would look to said se-
curities, and not these defendants, for the payment of
the note sued on herein in the event the same was
not paid by said Albert Lee; defendants state that,
relying upon said statements, agreements and prom-
ises of the plaintiff, through its officers, agents and
employees, and being deceived thereby, refrained from
proceeding to secure themselves from loss as sureties
on said note of the said Albert Lee; defendants fur-

ther state that afterward the plaintiff bank, through its officers, agents and employees, without the knowledge or consent of these defendants, carelssly, negligently and wrongfully allowed and permitted the said Albert Lee to dispose of by sale and otherwise the subject-matter of whatever security it had to insure the payment of all of the indebtedness, including the note in suit of the said Albert Lee to the plaintiff bank.

"Defendants further state that shortly after the statements, promises and agreements of the officers, agents and employees of the plaintiff hereinabove referred to and while defendants were relying upon the same, that the said Albert Lee, without the knowledge of defendants, became and still is hopelessly insolvent.

"Defendants further allege that but for the statements, agreements and promises of the officers, agents and employees of the plaintiff bank, made as aforesaid, while the said Albert Lee was solvent and responsible as aforesaid, that defendants could have, and would have proceeded to secure themselves against loss as sureties of said Albert Lee as aforesaid; but by said acts, promises and agreements of plaintiff's officers and agents they were lulled into a belief that they would not be proceeded against by plaintiff as sureties on said note until it was too late to protect themselves as sureties on said note and until said Albert Lee became hopelessly insolvent as aforesaid; and defendants now and here plead the statements, promises and agreements of the officers, agents and employees of the plaintiff bank as an estoppel prohibiting plaintiff from collecting the amount due on the note sued on herein for these defendants.

"Wherefore, defendants having fully answered, pray to be dismissed hence with their costs in the behalf expended."

The defense of estoppel upon which these defendants rely will defeat plaintiff's recovery, if proven,

even if under our laws as now framed one signing a
note as maker cannot by the mere showing of his real
relation to the payee be treated as a surety. "Equi-
table estoppel, or estopped *in pais,* is that condition
in which justice forbids that one speak the truth in
his own behalf." [De Lashmutt v. Teetor, 261 Mo.
412, 440, 169 S. W. 34.] "Equitable estoppel in the
modern sense arises from the *conduct* of a party,
using that word in its broadest meaning as including
his spoken or written words, his positive acts, and his
silence or negative omission to do anything. Its
foundation is justice and good conscience. Its object
is to prevent the unconscientious and inequitable as-
sertion or enforcement of claims or rights which might
have existed or been enforceable by other rules of the
law, unless prevented by the estoppel; and its practical
effect, is from motives of equity and fair dealing, to
create and vest opposing rights in the party who ob-
tains the benefit of the estoppel." [2 Pomeroy's Eq-
uity Jurisprudence (3 Ed.), 1416, paragraph 802.]
"When all the varities of equitable estoppel are com-
pared, it will be found, I think, that the doctrine
rests upon the following general principle: "When
one of two innocent persons—that is, persons each
guiltless of an intentional, moral wrong—must suffer
a loss, it must be borne by that one of them who by
his conduct—acts or omissions—has rendered the
injury possible." [Id. p. 1421.] On the same page
and in the succeeding paragraph the author sums up
and gives for the first time what he calls his definition,
as follows: "Equitable estoppel is the effect of the
voluntary conduct of a party whereby he is absolutely
precluded, both at law and in equity, from asserting
rights which might perhaps have otherwise existed,
either of property, of contract, or of remedy, as
against another person, who has in good faith relied
upon such conduct, and has been led thereby to change
his position for the worse, and who on his part ac-

quires some corresponding right, either of property, of contract, or of remedy.''

The appellants had as among themselves and against Lee certain rights concerning which they could legally protect themselves by obtaining security from Lee, and this would have been true even if they should be treated as co-makers with Lee, and since the plaintiff, according to the allegations of the answer, lulled the appellants into that sense of security which caused them to desist from doing that which would have prevented the loss plaintiff is now endeavoring to inflict upon them, justice unquestionably demands that we say that as to the parties so misled the note is paid. The rule announced in West v. Brison, 99 Mo. 684, 693, 13 S. W. 95, cited and quoted from in our previous opinion is equally applicable here. It matters not what the nature of the contract of appellant is with the plaintiff, the result must be the same. The answer we, therefore, hold constitutes a defense and the only other question we must decide, in view of a trial, is whether it shall be as at law or according to the course of courts of equity. This question will arise if either party demands a jury.

In Pitman v. 16 to 1 Mining Co., 78 Mo. App. 438, 440 and in Kansas City Star Publishing Co. v. Standard Warehouse Co., 123 Mo. App. 13, 18, 99 S. W. 765, it is held that estoppel *in pais* is applied as well in courts of law as in courts of equity.

''The doctrine of equitable estoppel is preeminently the creature of equity. It has, however, been incorporated into the law, and is constantly employed by courts of law at the present day in the decision of legal controversies.'' [2 Pom. Eq. Jur. (3 Ed.), page 1417, paragraph 802.]

That an action at law may be converted into one in equity by an answer setting up equitable matter *in pais* is the law in this State (Bouton v. Pippin,

192 Mo. 469, 473, 91 S. W. 149) but the answer must be one that alleges facts entitling the defendant to affirmative equitable relief and must ask for such relief (Pitts v. Pitts, 201 Mo. 356, 359, 100 S. W. 1047). In the case at bar the relief sought is not different from that granted upon proof of payment. The defense is founded on a doctrine that may have had its origin in equity, but as sought to be applied here requires no application of any of the principles peculiar to procedure in equity to make it effective. If we announced the law otherwise than that this case can be proceeded with as one at law we would be upholding a doctrine that would convert all actions at law into suits in equity whenever the doctrine of equitable estoppel becomes involved. Our conclusion is that the action remains one governed by the procedure applicable to actions at law. The only objection made to the answer is that the defense of estoppel is not available, but as we hold the contrary, the judgment must be reversed and the cause remanded. It is so ordered.

*Farrington* and *Sturgis, JJ.,* concur.