BANK OF NEELYVILLE, A Corporation, Respon-
dent, v. ALBERT LEE, G. C. STOUT, R. M.
ABERNATHY, W. L. BIGGS, and R. M. LOURY,
Appellants.

Springfield Court of Appeals, June 23, 1917.

1.  **BILLS AND NOTES: Principal and Surety: When Surety Released
    by Act of Creditor.**  Where a creditor gives a surety to understand
    that he will look to the principal debtor alone for payment, there-
    by causing the surety to forego taking security to protect himself
    and loss results to him, the surety is released.

2.  **ESTOPPEL: Applicable to Accommodation Makers and Indorsers of
    Note.**  The doctrine and principles of estoppel apply to release
    signers of a note whether they are, under the Negotiable Instru-
    truments Law, accomodation makers or indorsers.

3.  **BILLS AND NOTES: Release of Sureties: Authority of Bank Cash-
    ier.**  A bank cashier has no authority to release a surety on a note
    by mere contract or promise, but such bank may be estopped to col-
    lect from such surety by reason of the acts and representations of
    its cashier made in line of his duty.

4.  **BANKS AND BANKING: Bank Estopped by Cashier's Statements.**
    The cashier of a bank represented to sureties on a note who intended
    to take steps to secure themselves, that such steps were not neces-
    sary as the bank had taken a mortgage amply sufficient to secure
    all parties.   The bank was estopped by the cashier's statements.

5.  **BILLS AND NOTES: Principal and Surety: Surety Released: To
    What Extent.**  Where sureties on a note were released from liabil-
    ity to a bank because of statements of the cashier which caused
    them to refrain from taking securities to protect themselves, they
    were released only to the extent to which they were damaged by
    being caused to refrain from taking security such as they could
    have obtained from the principal debtor.

6.  ———: ———: **Release of Surety: To What Extent.**  The cashier of
    a bank represented to sureties on a note which it held that the

bank had taken a mortgage which amply secured the notes. The mortgage was not enforced against all the property covered by it and the proceeds were not applied in payment of the debts secured. The securities were released to the extent of their loss occasioned thereby.

Appeal from Butler County Circuit Court.—*Hon. J. P. Foard,* Judge.

REVERSED AND REMANDED.

*Abington & Phillips* for appellants.

*W. A. Welker* and *David W. Hill* for respondent.

STURGIS, J.—This is a. suit on a promissory note for $363.05 executed to defendant Loury by the other defendants and by him endorsed to the plaintiff bank. It is a companion case to those of Bank v. Lee et al., 182 Mo. App. 185, 168 S. W. 796 and Bank v. Lee, 193 Mo. App. 537, 182 S. W. .1016, and grows out of much the same facts. Each of said suits, however, is on different notes.

It is conceded that these notes were given for the benefit of Lee, who was in fact borrowing the money from the plaintiff bank. There is no question as to Lee's liability and here, as in the other cases, the other defendants seek to be released by reason of the conduct and representations ·made by the bank through its cashier, by which they were caused or induced not to take security for their own protection from the principal debtor, Lee. In the first of these cases this court held that, where a creditor gives a surety to understand that he will look to the principal debtor alone for payment, thereby causing the surety to forego taking security to protect himself resulting in. his loss, the surety is .released. In so doing we applied the principle of estoppel and released part of the then defendants and held others. One of the parties then released, W. L. Biggs, is a defendant here. In the second case, a demurrer having been sustained to the answer, we ruled that the

196 M. A.—32

doctrine and principles of estoppel would apply to release signers of a note whether they were, under the negotiable instruments law, accomodation makers · or endorsers.

In the present case of pleadings are practically the same as in · the other two cases, in the latter of which the answer is set out in full and held to state a good defense. During the course of the present trial the defendant Biggs, who had signed the note in suit as an accommodation maker, testified that he had signed two other notes for Mr. Lee which were held by the bank; that he thought these other notes had been paid but learned different; that he then went to the bank to see about getting these notes "straightened up;" that he saw the cashier and told him that he and the other sureties intended to get Lee to give a mortgage to secure him and the others against loss on these notes; that a little later he again talked with the cashier. Objection being made that the statements of the cashier would not be binding on the bank, the defendant then offered to prove by this witness "that on the date mentioned, between the 25th of January and the first of February, 1912, that in a conversation with Mr. Welker (cashier) in the bank of Neelyville, while George Stout was present, he stated to Welker that he (Biggs) and the other sureties of Albert Lee were intending to take such steps as might be necessary to secure themselves against loss; that Welker, the cashier, stated to him and Mr. Stout that it wasn't necessary for them to do so, and to rest easy because he had taken a chattel mortgage on all Albert Lee's property, in which chattel mortgage was property enough to secure them against loss on this note in suit and other notes, and that if Albert Lee didn't pay this note in suit when it was due the bank intended to make payment out of the property in the chattel mortgage, and wouldn't look to these sureties; that these sureties, relying upon the representations of Welker then and there made, took no security at all to protect themselves against loss, and that in the meantime Albert Lee

became insolvent.'' Offers to prove similar facts by other witnesses were also made. The court excluded this evidence on the objection that the cashier of a bank had no authority to make any such arrangement and that same was not binding on the bank, the court remarking: ''I think these cases hold that the authority—that the cashier must be shown to be given special authority, to make this evidence competent; any agreement by the cashier to release, or which would work a release by estoppel, would have to be made by special authority.'' The court afterwards refused to submit any defense to the jury and left nothing for it to do except calculate the interest and render a verdict in plaintiff's favor. A judgment being entered against all of the defendants they have taken proper steps to have the case reviewed by this court.

The authorities submitted to the trial court and on which he based his ruling are, Daviess Co. Sav. Assoc. v. Sailer, et al., 63 Mo. 24 and Savings Bank v. Hughes, 62 Mo. App. 576. The question of the authority of the bank cashier to do and say the things which are alleged to be binding on it and to release the endorsers and accommodation makers, whether by way of agreement or estoppel, was not presented on either of the former appeals. It was then assumed by all the parties that the statements and representations made by the cashier were binding on the bank by way of estoppel at least. It is claimed that the above authorities hold to the contrary, but we think not. We may readily agree that a cashier of the bank has not the authority by mere contract or promise to release a party to a note held by the bank since his authority is to collect such notes and not to release them. But to hold that no estoppel arises against a bank by reason of the acts or representations of its cashier, made in the line of his customary duties and authority, which has misled and caused another to change his situation for the worse, as to forego or release some right which he otherwise would not have done, is contrary to the fundamental principles of estoppel. [32 Cyc. 214.] The

cashier of the bank was entrusted with the power and duty to collect its notes and was, at the time, looking after the collection of the Lee notes of which this is one. He is the chief executive officer of the bank. He had authority to take security for these notes and did so, though it appeared in another case that he took a mortgage on some $4000 worth of property to secure a single note for about $500. His representation that this mortgage was taken to secure and did amply secure all these notes was clearly made in the line of his duty and apparent authority. To whom else than the cashier would a surety go to ascertain the status of a note on which he was liable? To hold that the surety had no right to rely and act on what the cashier told him is contrary to reason and common experience. [Michie on Banks and Banking, p. 802, sec. 113; Barnes v. Saving Bank (Ia.), 144 N. W. 367, 379.]

That a bank may be and frequently is estopped by the acts and representations or even omissions of its cashier of other officer from asserting or enforcing claims which it otherwise would have, is held in many cases. In Bank v. Lillard, 55 Mo. App. 675, where the cashier of a bank had innocently taken a forged note as a renewal note and some time later, discovering the forgery, attempted to collect from a surety on the genuine note, it being shown that when such genuine note became due the principal was solvent but later became insolvent, the court said: "If plaintiff's act in surrendering the note to the principal debtor cancelled and marked paid, caused these surety defendants to *forego or forbear* securing or indemnifying themselves from the principal debtor, in consequence of which forbearance they have lost available recourse on him by reason of his insolvency, they are discharged, regardless of any negligence on the part of plaintiff. If the plaintiff has thus caused them to forego taking security or indemnifying themselves when they otherwise would have done so, then in such case plaintiff's utmost care and prudence would be no answer to the injury done the sureties. Both parties in such case are

innocent, but plaintiff is the party, notwithstanding, who caused the injury and must be the one to bear the burden of such injury. We have had occasion to pass upon the general proposition of law as to the release of sureties under kindred conditions to those now presented. We here state what we understand it to be. When a creditor who knows that one occupies the relation of surety to the principal debtor notifies such surety that the debt is paid, or cancels the debt, the surety being apprised thereof, and in consequence of such notice or cancellation changes his situation, as by surrendering security, or refraining from taking security which he could have taken and which he *otherwise would have taken,* he is discharged. [Triplett v. Randolph, 46 Mo. App. 569; Driskell v. Mateer, 31 Mo. 325; Carpenter v. King, 9 Met. 517.]'' [See, also, Bank v. Danckmeyer, 70 Mo. App. 168; Bank v. Hardesty (Ky.), 91 S. W. 729; Hickock v. Farmers' & Mechanics' Bank, 35 Vt. 476; Bank of Polk v. Wood, 186 S. W. 1186; Hobbs v. Boatright, 195 Mo. 693, 728, 93 S. W. 934.]

The case of Savings Bank v. Hughes, 62 Mo. App. 576, relied on by plaintiff, goes no further than to hold that a bank cashier had no authority to discharge by *contract* a surety on a note without receiving payment. The discharge there claimed was based on a statement or promise by the cashier that, if the surety would aid the bank in getting security on another note to which he was not a party, the bank would release such surety from the note on which he was liable. There was no claim that the surety had been induced to refrain from protecting himself or that he was injured in any way. There is no estoppel in that case. The syllabus of the case of Daviess Co. Sav. Association v. Sailer, 63 Mo. 24, relied on by plaintiff, is somewhat misleading and goes further than the court actually decided. All that was proved in that case was that the surety went to the bank and asked the cashier if the note was paid; that the cashier said it was not, but that another bank had a mortgage on all the principal

debtor's land, was carrying him, and that his bank would not look to the surety any longer for payment; that in consequence of these statements the surety thought no more of the matter and was surprised when sued on the note. The court ruled: "There was nothing in this statement from which the witness had a right to assume that the note had been paid, or otherwise secured; on the contrary the very reverse was stated in plain words, and the information in regard to what had been done in the bank at Chillicothe did not give any assurances that this note had been provided for in the mortgage taken by that bank. Assuming, however, that the cashier's assurance was, that the debt was otherwise secured and that the defendant would not be troubled; that was, as the court of New Hampshire declares in Cocheco Bank v. Haskell, 51 N. H. 116, (a case cited and relied on by both parties), a mere agreement to discharge the surety, and not within the ordinary scope of a cashier's authority. . . . There is no dispute in this case in regard to the general principles of estoppel. They are recognized by this court in Driskell v. Mateer, 31 Mo. 325. The only question for this court to decide is, how far declarations and statements by an officer of a bank, called a cashier, binds the bank, in a case where there is no evidence of special authority." Turning to the case of Cocheco Bank v. Haskell, 51 N. H. 116, 12 Am. Rep. 67, cited by the Supreme Court as the basis of its decision, we find that the court distinguishes between mere promises and statements of the bank's cashier that it would release a surety or no longer look to him for payment as being a void contract and statements and representations of fact made by such cashier which induces another who had a right to rely thereon to do or omit doing something to his injury; that is, between contract and estoppel. The court there said: "In view of these principles and authorities, we think the cashier of a bank has ordinarily no power to discharge a debtor of the bank without payment, or to bind the bank by an agreement that a surety should not be called upon to

pay a note he had signed, or that he would have no further trouble from it. . . . . It would be otherwise, we think, as to his declaration that the note was paid. It is his duty to receive payment and to keep the account of it, and he is the proper person to apply to, to ascertain whether a note has been paid or not. It would, indeed, be peculiarly within the scope of the business confided to him to give such information. If, then, on being inquired of by a surety, he had informed him that the note was paid, intending that he should rely upon the statement, and the surety was thereby induced to change his position, the bank would be *estopped* to deny that the note was paid."

If the case of Daviess Co. Sav. Assoc. v. Sailer, supra, be construed to hold that a bank cannot be estopped by the representations of its cashier so as to discharge a surety then it is in conflict with the case of West v. Bryson, 99 Mo. 684, 13 S. W. 95. In that case the court held that an administrator whose business it was to collect debts due the estate, yet had authority to extend the time of payment of an obligation, and by so doing would discharge a surety. It being shown, however, that there was no agreement to extend payment for a valuable consideration or definite time such agreement was void. "There are, however," says the court, "other principles of law applicable to this case. If the creditor gives the surety to understand that he will look to the principal debtor, alone, for payment, and the surety is thereby lulled into security to his loss, the creditor should suffer the consequences. Thus it was held in Harris v. Brooks, 21 Pick. 195, that a parol declaration of the holder of the note to the surety, that he would exonerate him and look to the principal only, and the surety by reason thereof omitted to take up the note and secure himself, constituted a good defense for the surety. Though a promise to look to the principal alone for payment, standing by itself, would be a *nudum pactum;* still, as has been said, 'where, however, the surety is induced by such an assurance to surrender the securities which he has received from the

principal, or to forego any means of indemnity or protection, an estoppel will arise to the extent of the resulting loss.' [2 Am. Lead. Cas. (5 Ed.), 481.] Here Bryson, the surety, was lulled into security by the assurance of Brooks, for a period extending from 1874 or 1876 to 1885, and in the meantime the principal debtors and all of the other sureties became insolvent. The principal debtors had furnished security by the deed of trust, executed in 1876, sufficient to satisfy the balance due upon the judgment; but this security became depreciated by the *laches* of Brooks. It would be nothing short of giving effect to a fraud to require the .Bryson estate to pay any part of the judgment under those circumstances." This is a clear holding that a promise or representation that the creditor would not look to the surety for payment, while void as a contract, may nevertheless be the basis of an estoppel when acted on by the surety to his loss. We must hold, therefore, that the court erred in rejecting the offered evidence.

The bank had a perfect right to take security from Lee for any particular note or notes. It seems that it had done so before the sureties took action looking to securing themselves. Whether such sureties or co-makers could or would .at that time have been able to secure themselves and to what extent is a question for the jury. In no event are the sureties to be relieved beyond the extent to which they were damaged by being. caused to refrain from taking security such as they could get from the principal debtor.

There is some evidence also to the effect that the bank failed to enforce its mortgage against all of Lee's property covered by it and apply the proceeds to Lee's debts. This, of course, the bank was obligated to do and its failure so to do would release the sureties to the extent of their loss. [Lakeman v. North Missouri Trust Co., 147 Mo. App. 48, 126 S. W. 547; Troll v. Real Estate Co., 186 Mo. App. 196, 171 S. W. 665.] This phase of the case was not fully developed

and the evidence is not satisfactory. We merely allude to it in view of another trial.

The case is reversed and remanded, to be retried in accordance with this opinion and the opinions in the two former cases of like nature. *Cox, P. J.,* and *Farrington, J.,* concur.